Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Todd Logan (SBN 305912)
tlogan@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Classes*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES PORATH, individually and on behalf of all similarly situated individuals,<br><br>*Plaintiff,*<br><br>*v.*<br><br>LOGITECH, INC., a California corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br>(1) **Fraud;**<br>(2) **Violation Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and**<br>(3) **Violation Cal. Bus. § Prof. Code §§ 17500 *et seq.*** |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff James Porath ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Logitech, Inc. ("Defendant" or "Logitech"), based on its deceptive marketing practice of its computer speakers. Plaintiff alleges as follows:

### NATURE OF THE ACTION

1.     Logitech is a manufacturer, distributor, and seller of computer peripherals and accessories. According to Logitech, it is the "#1 selling PC speaker brand."

2.     Indeed, the Z200 stereo sound system is one of Logitech's best-selling computer speakers. Retailing at less than $30, Logitech seeks to provide a budget-friendly speaker system that outperforms the quality of built-in computer speakers.

3.     Logitech's dominance in the PC speaker market—especially in the budget speaker category—is not surprising. Logitech advertises the Z200 stereo sound system with specifications well-beyond those of its competitors in the same price range. While a majority of budget speaker manufacturers sell speakers with only one or two drivers (the sound producing component of a speaker), Logitech markets the Z200 speakers as featuring *four "high-quality" drivers*.

4.     But Logitech does not deliver on its promise. Instead, it designed and sold the Z200 stereo system with only *two* drivers and two devices called passive radiators, the latter of which it calls "passive drivers." These supposed "drivers", however, do not produce any sound because they lack critical sound-producing components like the voice coil and the permanent magnet that traditionally make up a driver. Simply put, a "passive driver" is something that does not exist.

5.     Logitech designed all of the Z200 system's "drivers," including the non-sound producing passive radiators, to look exactly the same. In doing so, Logitech hopes to convince consumers to purchase its product, not only through its affirmative misrepresentation of the product's driver count, but also because its passive radiators *look* like functional drivers. Logitech's design choice seeks to capitalize on the basic marketing tactic of "the more the better" and hopes that consumers will choose a speaker that appears to have more drivers, like the Z200.

6.     As such, Plaintiff Porath, individually and on behalf of the putative Classes of similarly situated individuals seeks (i) to prevent Logitech from continuing to misrepresent its product's specifications, and (ii) actual damages for consumers who were deceived into purchasing Logitech's Z200 speakers.

**PARTIES**

7.      Plaintiff James Porath is a natural person and a citizen of the State of California.

8.      Defendant Logitech, Inc., is a corporation organized and existing under the laws of the State of California with its principal place of business located at 7700 Gateway Boulevard, Newark, California 94560.

**JURISDICTION AND VENUE**

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than the Defendant, (ii) the amount in controversy exceeds, $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

10.      This Court has personal jurisdiction over Defendant because Defendant conducts business in California and is headquartered in California and this District.

11.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because defendant maintains its headquarters and conducts significant business in this District.

**COMMON FACTUAL ALLEGATIONS**

***Logitech Advertises the Z200 Stereo Sound System as a Four Driver Design.***

12.      Logitech is a Swiss manufacturer, seller, and distributor of computer accessories such as keyboards, mice, webcams, and speakers. According to Logitech, it is the "#1 selling PC speaker brand."

13.      Logitech released the Z200 stereo sound system in 2013. Since then, the Z200 speakers consistently ranks among the top results for the search term "computer speakers" on popular e-commerce websites like Amazon and Newegg, and are often identified as a "best seller" or "Amazon's Choice" in the "computer speaker" category on Amazon.

14.      It is no surprise that Logitech dominates the PC speaker market. After all, Logitech's Z200 stereo sound system retails for less than $29.99 and is one of the few systems in this price range that not only appears to be a four-driver system, but is also advertised as having "four drivers."

15.     The Logitech Z200 stereo sound systems contains two speakers: one for the right channel and one for the left. Each speaker ostensibly contains two sound producing components of a speaker known as a driver. Together, the Z200 stereo pair appears to have four functional drivers. *See* Figure 1.



(**Figure 1,** showing the Z200's identical external cones.)

16.     Indeed, Logitech designed both the top and the bottom "drivers" of a speaker to look identical. Consumers have no ability to distinguish the top and the bottom "drivers" and therefore—being a computer speaker—consumers expect that both devices have the same function: to affirmatively produce sound.

17.     Logitech's product descriptions and marketing material for the Z200 stereo sound system, and the intentional design of the speakers corroborate Logitech's consistent message that this product has four drivers.

18.     Logitech sells the Z200 stereo sound system online at retailers such as Amazon.com and Newegg.com, as well as traditional brick-and-mortar retailers including Best Buy, Walmart, and Fry's Electronics. Through both its online retailers and brick-and-mortar stores, Logitech makes affirmative representations that its Z200 stereo system features four drivers. Specifically, Logitech provided product descriptions of the Z200 stereo sound system to various online retailers and distributed its own marketing material in the form of brochures and product packaging.

19.     For example, Logitech provided to Amazon.com product page descriptions of the Z200 stereo sound system. The product summary states that the Z200 system features "Two 2.5 [inch] drivers per speaker." *See* Figure 2.



(**Figure 2,** showing Logitech's promise of "Two 2.5" drivers per speaker" on Amazon.com.)

20.     The bulk of Logitech's product description of the Z200 system on Amazon continues to tout the system's four driver design and promises "four high quality 2.5-inch drivers," "two drivers per satellite," and "two 2.5-inch drivers per speaker." *See* Figures 3 and 4.



(**Figure 3.**)

//

//

//

**Rich, room-filling sound**
- Two 2.5-inch drivers per speaker deliver rich, balanced stereo sound
- Tuned for added deep bass
- 10 watts of peak power—enough to fill any living space with clear sound

Enlarge

(**Figure 4.**)

21.     Logitech created a downloadable product specification sheet describing the Z200 stereo sound system and distributed it to Amazon and its customers. Logitech portrays a Z200 speaker producing sound waves from the top and bottom drivers. The marketing copy accompanying the graphic clearly states that the Z200 system contains "two 2.5" drivers per speaker." *See* Figure 5.[1]



**FEATURE SPOTLIGHT**

**Rich 2.0 stereo sound with enhanced bass**

With 5 watts RMS (10 watts peak power) and two 2.5" drivers per speaker, these desktop speakers substantially out-perform the acoustic quality of built-in computer audio.

(**Figure 5.**)

22.     Similarly, Logitech provided the Z200 speaker's product description to Newegg.com with virtually the same representations that its system features "two 2.50" drivers per speaker." *See* Figure 6.

//

//

//

_____

[1]     *Bring big sound to small place. The Logitech Multimedia Speakers z200,* (last visited Apr. 27, 2018).



(**Figure 6,** showing Logitech's promise of "Two 2.50" drivers per speaker" on Newegg.com)

23. And, exactly like Amazon and Newegg, Logitech provided Walmart.com with the Z200's product descriptions. According to Walmart, the item description "is provided by the manufacturer, supplier and others, and has not been verified by [Walmart]." The representations of the Z200 system are substantially similar to other online retailers and is described as having "two drivers per satellite" and "2 x 2.0 drivers." *See* Figure 7.

> **About this Item**
>
> **Disclaimer:** While we aim to provide accurate product information, it is provided by manufacturers, suppliers and others, and has not been verified by us. See our disclaimer.
>
> With two drivers per satellite delivering 10 watts of peak power, Z200 Multimedia Speakers produce rich, balanced stereo and clear acoustics for a room-filling sound. The 2 x 2.0 drivers deliver 5 watts of rich stereo sound, with added deep bass. You can use the 3.5mm audio input and auxiliary line to play audio content from multiple devices simultaneously. Integrated power and volume controls on the front with bass at the side for quick and convenient adjustment of your audio settings. Use the handy headphone jack to connect your headphones and listen to music, movies and games in total privacy.
>
> **Logitech Z200 2.0 Speaker System - Black**
>
> - Delivers rich, balanced stereo and clear acoustics for a room-filling sound
> - Play audio content from multiple devices simultaneously
> - Integrated power and volume controls on the front for quick and convenient adjustment
> - Handy headphone jack for your headphones
> - Rotate the tone control wheel at the side for added deep bass

(**Figure 7.**)

24. For its brick-and-mortar customers (and for customers who have already purchased the Z200 stereo sound system online), Logitech designed its packaging to repeat its

uniform marketing message. The product packaging highlights the system's "four-driver" design. *See* Figure 8.



(**Figure 8.**)

25.     Finally, one of Logitech's representations show a Z200 speaker with two drivers emitting sound waves from each driver. The caption states, "2-driver system delivers room-filling sound." And finally, to put to rest any doubt, the cross-section image depicts two drivers in one speaker with a large permanent magnet on each driver, a fundamental characteristic of a functioning driver that does not exist in the real product. *See* Figure 9.



(**Figure 9.**)

***By Widely Accepted Industry Standard Definitions, and Logitech's Own Internal Admission, the Z200 Stereo Sound System Only Has Two Drivers.***

A.     ***A Driver is a Known and Well-Defined Audio Component***

26.     The definition of a "driver" is well-established in the audio industry. Indeed, the Audio Engineering Society (the "AES")—a professional society devoted to audio technology—publishes annual technical audio standards that are relied on to allow for consistent manufacturing of audio products.[2] The AES defines "driver" as an "electroacoustic transducer." *See* Figure 10.

> **3.2**
> **drive unit, driver**
> a basic electroacoustic transducer forming an article of commerce, used in conjunction with other parts, such as baffles, enclosure or horns, to construct a loudspeaker or loudspeaker system.

**(Figure 10.)**

27.     Transducers convert energy from one form into another. In the case of an "electroacoustic" transducer, the transducer converts *electrical* energy into *acoustic* sound energy. Therefore, a driver converts an electrical audio signal into sound waves or acoustic energy.

28.     Indeed, Logitech has accepted this well-established industry definition of a driver. According to its *own* online audio glossary, Logitech explains that a driver is a "device that turns electrical signals into sound waves" and it is "usually made up of a magnet and a voice coil." *See* Figure 11.[3]

//

//

//

//

_____

[2]     *The Audio Engineering Society*, http://www.aes.org/about/ (last visited May 23, 2018).
[3]     *Audio Glossary,* Logitech, https://www.logitech.com/en-us/articles/6019 (last visited May 23, 2018).

> **Driver**
>
> This is where the magic happens. It's an electromagnetic device that turns electrical signals into sound waves in the air by moving a thin layer of fabric or paper. It's usually made up of a magnet and voice coil.

(**Figure 11.**)

29.    In fact, the three key components that make up a driver are: the cone (shown as A), permanent magnet (shown as B), and a voice coil (shown as C). *See* Figure 12.



(**Figure 12.**)

30.    The voice coil is a simple electromagnet that is attached to the cone. When an electric current is applied to the voice coil, it creates a magnetic field with a polar orientation (*i.e.*, positive or negative). An alternative current—such as an audio signal from an amplifier—causes the voice coil to rapidly change polarity.

31.    In a driver, a voice coil is positioned in a permanent magnet's magnetic field. When an alternating current is applied to the voice coil, thus changing the coil's polarity, it is either attracted or repelled from the permanent magnet. As a result, the coil's back and forth movement pushes and pulls the cone like a piston thus vibrating the air and creating a sound wave.

32.     By adding more drivers to a speaker, a manufacturer can increase the speaker's total acoustic power and the loudness of the speaker (expressed as the speaker's Sound Pressure Level or "SPL"). Indeed, more drivers means more cones and an increase in the total surface area capable of vibrating the surrounding air.[4] A speaker with two drivers can increase its acoustic power by fourfold over that of a single driver.[5] And, a two-driver design doubles a speaker's SPL, or loudness, over a one-driver design.[6]

**B.    *The Z200 Speakers Indisputably Have Two Drivers, Not Four.***

33.     Unfortunately, two of the Z200's supposed "drivers" are not drivers at all. These "drivers" lack a voice coil and a permanent magnet and therefore are not electroacoustic transducers and cannot independently produce sound from an electrical signal.

34.     As shown in <u>Figure 13,</u> the "driver" (pictured right) lacks a permanent magnet and a voice coil. The real driver, on the left, contains both components including an input terminal that connects to the Z200's built-in amplifier that transmits an electrical signal. The key distinction between those two components is that the real driver on the left independently produces sound. The "driver" on the right does not.

//

//

//

//

//

//

---

[4]     *Frequently Asked Questions,* http://www.linkwitzlab.com/faq.htm#Q21 (last visited May 23, 2018).
[5]     *Id.* ("When two identical drivers are connected in parallel, each piston moves with the same velocity as the single driver, because the current through each voice coil is the same as before. The total radiating area has doubled, and the radiated acoustic power has increased fourfold.")
[6]     *Id.*



(**Figure 13,** showing the Z200's driver, left, and the passive radiator, right.)

35.     Instead, the component on the right, which lacks a voice coil and the permanent magnet, is best described as a "passive radiator." A passive radiator is not a transducer that converts an electrical signal into a sound wave (due to its obviously missing components). Rather, a passive radiator may help "tune" a speaker enclosure by emphasizing certain frequencies such as low-end bass notes.

36.     To the extent that Logitech calls its passive radiator a "passive driver"—for the sole purpose of misleading consumers—Logitech has simply invented a paradoxical term that does not exist. As discussed in depth above, a driver is a transducer capable of producing sound and requires at least a permanent magnet and a voice coil.

37.     Instead of the four drivers, Logitech designed and manufactured the Z200 stereo system with *only two drivers and two passive radiators* (one driver and one passive radiator in each speaker).

38.     From the exterior, Logitech's passive radiator is indistinguishable from a real driver. The only way a consumer would discover that Logitech's so-called "driver" was actually a passive radiator is to physically open the Z200's speaker enclosure. However, doing so would instantly void the speaker's warranty.

39.     Logitech purposely designed the Z200's passive radiator with the same cone as its driver to mislead consumers into believing its product has four drivers. Logitech seeks to capitalize on the marketing tactic of "the more the better" and hope that consumers will chose the Z200 stereo sound system because its speakers have more drivers than its competitors.

40.     In fact, Logitech provides Amazon customers with a chart that they can use to compare its computer speakers. Logitech labels the Z130 and Z150 speakers with only one driver per speaker as "good" while labeling the Z200 speakers as "better" largely because of the two drivers per speaker design. *See* Figure 14.



**Compare**
Which Logitech Speakers Are Right For You?

| | Mono 1.0 Speaker | 2.0 Stereo Speakers | | | |
|---|---|---|---|---|---|
| | Multimedia Speaker Z50 | Speakers Z130 | Multimedia Speakers Z150 | Multimedia Speakers Z200 | Speaker System Z320 |
| What Do You Get? | Amplify your sound | Rich stereo sound and compact design | Small size, clear sound | Rich stereo sound with deep bass | Clear 360-degree sound all around the room |
| **Audio Features** | | | | | |
| Peak power | 10 watts | 10 watts | 6 watts | 10 watts | 20 watts |
| # of drivers per speaker | 1 | 1 | 1 | 2 | 2 |
| Inputs for computer, music, movie and game devices | 1 | 1 | 2 (1x audio 3.5mm, 1x AUX-IN) | 2 (1x audio 3.5 mm, 1x AUX-IN) | 1 |
| Headphone Jack | | • | | • | • |
| **Controls** | | | | | |
| Type | On-device | On-speaker | On-speaker | On-speaker | On-speaker |
| Functions controlled | | Volume, power | Volume, power | Volume, power, tone | Volume, power |
| **System Support** | | | | | |
| Windows XP, Windows 7, Windows Vista, Windows 8 | • | • | • | • | • |
| Mac OS X | • | • | • | • | • |
| Tablets, Smartphones, MP3 players | • | • | • | • | • |

Good / Better / Best

(**Figure 14.**)

41.     Logitech is able to maximize its profits by selling the Z200 speaker over its other stereo sound systems with less drivers. For instance, the Z150 speaker has two drivers total and retails for $19.99 and the Z200 with the advertised "four drivers" retails for $29.99. Thus, Logitech is able to realize 50% more profit from a two-driver speaker system by falsely inflating the driver count.

42.     Accordingly, unsuspecting consumers who purchased the Z200 stereo sound system expected to receive a stereo system with four drivers total, but instead received a system with only two. Consumers would not have purchased the Z200 speakers, or would have paid significantly less, had they known of Logitech's deception.

## FACTS SPECIFIC TO PLAINTIFF PORATH

43.     On or around July 2016, Plaintiff Porath navigated to Newegg.com where he saw pictures of the Z200 stereo sound system. Porath saw representations identical to those in Figure 6. Specifically, Porath saw representations that Defendant's Z200 stereo sound system features "two 2.5" drivers per speaker."

44.     Relying on Logitech's representations as to the number and size of drivers per speaker, Plaintiff Porath purchased a Z200 stereo sound system from Newegg.com.

45.     Plaintiff Porath then began using the Z200 stereo sound system. But, as described above, the Z200 stereo sound system only contained two drivers *total* or one driver per speaker. In fear of voiding his warranty, Porath did not open his Z200 speaker.

46.     Had Plaintiff Porath known that the Z200 stereo sound system featured only two drivers, he would either have paid significantly less for it or would not have purchased Logitech's product at all (and instead would have purchased a stereo system that actually had four drivers).

## CLASS ALLEGATIONS

47.     **Class Definition:** Plaintiff Porath brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class and Subclass (collectively, the "Classes") of similarly situated individuals defined as follows:

> **Nationwide Class:** All individuals in the United States who purchased Logitech's Z200 stereo sound system.

> **California Subclass:** All members of the Nationwide Class that are domiciled in the State of California.

The following people are excluded from the Classes and Subclasses (the "Classes" unless otherwise noted): (1) any Judge or Magistrate presiding over this action and the members of their

family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

48.    **Numerosity**: The exact number of members of the Classes is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Classes likely consist of tens of thousands of individuals. Members of the Classes can be easily identified through Defendant's records and/or Defendant's retail partners' records.

49.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not limited to, the following:

a.    Whether Defendant's conduct constitutes fraud;

b.    Whether Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); and

c.    Whether Defendant violated Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL")

50.    **Typicality:** Plaintiff's claims are typical of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct.

51.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

52.    **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the

Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or laws applicable only to Plaintiff. Plaintiff and the members of the Class have suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

53. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

54. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

### FIRST CAUSE OF ACTION
**Violation of Common Law Fraud**
**(On Behalf of Plaintiff Porath, and the Nationwide Class)**

55. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

56. Defendant designed and disseminated false and misleading representations for the Z200 stereo sound system. Specifically, Defendant designed the Z200 stereo sound system to

appear to have four drivers and advertised the Z200 stereo sound system as featuring "four drivers."

57.     The number of drivers is a material term of any sale transaction involving a sound system or a speaker because it directly affects the consumer's choice whether to purchase a particular sound system or speaker.

58.     Defendant knew (or should have known) the falsity of its statement. That is, Defendant knew or should have known that its Z200 stereo system does not feature four drivers.

59.     Defendant intended that the deceptive and fraudulent misrepresentations regarding the number of Z200's drivers would induce consumer to rely upon its representations and act by purchasing the Z200 stereo sound system.

60.     Defendant received money as a result of the Plaintiff and the Class members purchasing a product that did not meet the advertised specification. Accordingly, Plaintiff and the Class members have suffered harm in the form of lost money proffered to Defendant in justifiable reliance on its representations of material fact.

61.     As such, Plaintiff, on behalf of himself and a Class of similarly situated individuals, seek damages from the Defendant's unlawful conduct.

**SECOND CAUSE OF ACTION**
**Violation of the California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff Porath and the California Subclass)**

62.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

63.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

64.     The UCL prohibits any unlawful, unfair, or fraudulent business act or practice, including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or concealment, suppression, or omission of any material fact. A business practice need only meet one of the three criteria to be considered unfair competition.

65.     The specifications and representations of a consumer product is a material term of a transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the specifications or representations of a product is materially misleading.

66.     As described above, Defendant has engaged in a deceptive business practice by falsely representing that its Z200 stereo sound system features four drivers.

67.     Defendant's representations were, in fact, false. Defendant's Z200 stereo sound system only contain two drivers—not four as advertised by Defendant.

68.     Defendant has violated the fraudulent prong of the UCL by knowingly making false representations to consumers regarding the number of drivers in its Z200 stereo sound system.

69.     Reasonable consumers are likely to be, as Plaintiff and the putative Class were, deceived by Defendants misrepresentations.

70.     Defendant also violated the UCL's unfair prong by causing substantial injury to consumers through its fraudulent conduct described above. The injuries caused by Defendant's unfair conduct are not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided. Given the information asymmetry between Defendant and consumers regarding the true number of drivers of the Z200 stereo sound systems, Defendant knew or had reason to know that Plaintiff and the Class could not have reasonably known or discovered the falsity of representations about the actual number of drivers.

71.     Defendant's fraudulent and unfair conduct occurred during the marketing, distribution, and sale of consumer computer speakers, and therefore occurred in the course of Defendant's business practices.

72.     Defendant's fraudulent and unfair conduct directly and proximately caused Plaintiff and the Class actual monetary damages in the form of the price paid for the Z200 stereo

sound system or, at least, the difference between what they paid for the computer speaker and its actual value.

73.     But for Defendant's conduct as described herein, Plaintiff and the Class would not have purchased the Z200 stereo sound system or would have paid substantially less for it.

74.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order (1) requiring Defendant to cease the unfair practices described herein; (2) requiring Defendant to restore to Plaintiff and each Class member any money acquired by means of unfair competition (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

**THIRD CAUSE OF ACTION**
**Violation of False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of Plaintiff Porath and the California Subclass)**

75.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

76.     California's False and Misleading Advertising Law ("FAL") prohibits corporations from intentionally disseminating advertisements for products or services that are "unfair, deceptive, untrue, or misleading." Cal. Bus. & Prof. Code §17500.

77.     Defendant has disseminated unfair, deceptive, untrue, and misleading advertisements stating Defendant's Z200 stereo sound system features "four drivers." As detailed above, these advertisements are false and misleading and were designed to convince consumers to purchase Defendant's product. In short, Defendant's advertisements are false because they advertise specifications that Defendant knew the Z200 stereo sound system did not have (i.e., Defendant knew its Z200 stereo sound system only had two drivers).

78.     Indeed, a reasonable person is likely to be deceived by Defendant's advertisements. Consumers had no way to discover the falsity of Defendant's advertisements and representations.

79.     Defendant knew or should have known when creating and disseminating these advertisements that they contained materially false and misleading information.

80. Defendant's conduct directly and proximately caused Plaintiff and the Class actual monetary damages in the form of the price paid for the Z200 stereo sound system or, at least, the difference between what they paid for the sound system and their actual value.

81. Plaintiff seeks an order (1) requiring Defendant to cease the false advertising practices described herein; (2) requiring Defendant to restore to Class members any money acquired by means of false advertising (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

**PRAYER FOR RELIEF**

WHEREFOR, Plaintiff Porath, on behalf of himself and the Classes, respectfully requests that the Court enter an order:

A. Certifying this case as a class action on behalf of the Classes defined above, appointing Plaintiff Porath as representative of the Classes, and appointing his counsel as class counsel;

B. Declaring that Defendant's actions, as set out above, constitute fraud and violates the UCL, and the FAL;

C. Awarding damages, including statutory and punitive damages where applicable;

D. Awarding Plaintiff and the Classes their reasonable litigation expenses and attorneys' fees;

E. Awarding Plaintiff and the Classes pre- and post-judgment interest, to the extent allowable;

F. Awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Classes; and

G. Awarding such other and further relief as the Court deems reasonable and just.

**DEMAND FOR JURY TRIAL**

Plaintiff Porath demand a trial by jury for all issues so triable.

Dated: May 23, 2018                    Respectfully submitted,

                                       **JAMES PORATH**, individually and on behalf of
                                       all other similarly situated,

                                       By: /s/ Todd Logan

                                       Rafey Balabanian (SBN 315962)
                                       rbalabanian@edelson.com
                                       Todd Logan (SBN 305912)
                                       tlogan@edelson.com
                                       EDELSON PC
                                       123 Townsend Street, Suite 100
                                       San Francisco, California 94107
                                       Tel: 415.212.9300
                                       Fax: 415.373.9435