Pages 1 – 13

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP, JUDGE

```
JAMES PORATH,                       )
                                    )
              Plaintiff,            )
                                    )
   VS.                              ) NO. C 18-3091 WHA
                                    )
LOGITECH, INC.,                     )
                                    )  San Francisco, California
              Defendant.            )
                                    )
_____)
```

Thursday, August 23, 2018


### TRANSCRIPT OF PROCEEDINGS


**APPEARANCES**:

For Plaintiff:

        EDELSON, PC
        123 Townsend Street
        Suite 100
        San Francisco, California  94107
    BY:  **RAFEY S. BALABANIAN, ESQ.**
        **TODD M. LOGAN, ESQ.**

For Defendant:

        MAYER BROWN LLP
        350 South Grand Avenue.
        25th Floor
        Los Angeles, California 90071
    BY:  **DALE J. GIALI, ESQ.**


Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
        Official Reporter, U.S. District Court

1    <u>**Thursday - August 23, 2018**</u>                                    <u>**11:08 a.m.**</u>

2                                    P R O C E E D I N G S

3          **THE COURT:**  All right.  Everyone here on Logitech?

4    All right, let's come forward.

5          **THE CLERK:**  Calling Civil Case No. 18-3091, James

6    Porath versus Logitech.

7          **MR. BALABANIAN:**  Good morning, Your Honor.  Rafey

8    Balabanian, and I'm joined by Todd Logan, on behalf of

9    plaintiff Porath and the putative class.

10         **MR. GIALI:**  Good morning, Your Honor.  Dale Giali on

11   behalf of defendant Logitech.

12         **THE COURT:**  Sorry, is this a proposed class action?

13         **MR. BALABANIAN:**  It is, Your Honor.  And at the

14   outset, I want to apologize to the Court for one oversight in

15   our joint case management statement.

16        While we did go over the Court's notice and procedure with

17   respect to class actions, and are quite familiar with it, we

18   failed to provide a protocol with respect to interviewing

19   absent class members.

20         **THE COURT:**  Well, but you can't even talk settlement

21   until -- until there's a certified class.

22         **MR. BALABANIAN:**  Correct.

23         **THE COURT:**  You understand that.

24         **MR. BALABANIAN:**  Absolutely, we understand that.

25   There are issues that touch upon that in the joint case

1   management statement, Your Honor.

2       We've also filed, my firm has, a motion for appointment of

3   interim lead counsel in conformity with the Court's --

4       **THE COURT:**  Why can't we go through the normal -- why

5   do you need to be appointed lead counsel now?

6       **MR. BALABANIAN:**  In order to speak settlement.  That

7   would be the purpose.

8       **THE COURT:**  But why -- are they going out of

9   business?

10      **MR. BALABANIAN:**  They are not.

11      **THE COURT:**  Then why -- what's the -- I need for my

12  law clerk to go get me -- I don't have a form CMO here.  You

13  didn't give me that.  That's in the Logitech case.

14      But I can wait -- see, look, here's the problem.  It's

15  called collusive settlements.  I've had the following scenario.

16  You apply to be -- you bring a class action.  The other side

17  realizes that you've got a convicted felon.  I'm making this up

18  hypothetically.  Or there's some other reason that you don't

19  want the judge to know.

20      Then you go do a collusive deal, come back, and say:  Oh,

21  Judge, we got it off your calendar, no problem.  Great.  And

22  for X dollars to the class and a huge, much bigger amount to

23  the lawyer, you're going to settle the case.

24      Well, a lot of judges would rubber-stamp that because

25  they'd love to get rid of the case.  Well, I don't do that.  My

1    job is to protect the absent class members.

2        And in that kind of a deal, what the lawyer is doing for

3    Mayer Brown, hypothetically, is buying you off with a big

4    amount and getting a release of class -- I've had this happen

5    many times.  I stop it when I find out about it.  So we are

6    going to find out if you have got a legitimate class first.

7        Now, if they are going bankrupt and have some legitimate

8    reason why you've got to negotiate now, I will hear you out on

9    that.  What is your reason?

10       **MR. BALABANIAN:**  If I can just speak to the issues

11   briefly, Your Honor, because I'm very familiar with the

12   Court's viewpoint on class actions and the concerns about an

13   early settlement compromising the interest of absent class

14   members through a reverter settlement, a claims-made

15   settlement that's not exhaustive of --

16       **THE COURT:**  Or doing one before you've done your

17   homework.

18       **MR. BALABANIAN:**  Absolutely.

19       **THE COURT:**  Until you've deposed everybody in sight,

20   so we know whether you've got a good class.

21       **MR. BALABANIAN:**  And certainly, as the Court is a

22   fiduciary of the class, so am I, Your Honor.  And, the idea

23   of --

24       **THE COURT:**  You're not, until I appoint you as it.

25   And I don't know that you qualify as a fiduciary until we go

1    through the process.

2          **MR. BALABANIAN:**  Of course.  And I understand that

3    the Court, in its notice regarding class action settlements,

4    points out that there might be the -- a preliminary showing

5    that's necessary.  And while we've discussed that issue in our

6    case management statement, and said that we don't need to go

7    through a fulsome class certification briefing right now, we

8    are prepared to do whatever the Court deems is necessary, if

9    it would even indulge us on this issue.

10          And if I can just back up for a moment.  We did not

11    approach the defendant about settlement, as we set forth in our

12    case management statement.  Mr. Giali approached us at the

13    outset of this litigation, upon our first contact, and he

14    raised the prospect of potentially discussing settlement, with

15    an eye towards the fact that Your Honor's order is clear that

16    no such discussion can take place before class certification is

17    decided by the Court.

18          And we accept and respect, of course, that order.  And we

19    did not even come close to the edges of talking about an actual

20    settlement.  What we did was, being familiar with this Court's

21    order -- and we've both been before this Court before, and, and

22    are familiar with the procedures as they relate to class

23    actions -- we put forth to the Court in our case management

24    statement the reasons why we think an early settlement is -- or

25    an early settlement discussion with a Magistrate Judge is

```
 1    potentially a --

 2              THE COURT:  What are those reasons?

 3              MR. BALABANIAN:  Well, the defendant has, from the

 4     outset of this case, expressed, in my view, an earnest

 5     interest in changing its practices, acknowledging that there

 6     is a problem here.  And in their words, making the class whole

 7     for the alleged deception that took place in this case.

 8         They have already undertaken changes with respect to the

 9    advertising of these products.  And not at our behest, but on

10    their own.  I think that's a good step.  I don't think that

11    resolves the case in any way, shape or form.  Absolutely, this

12    case is about a class who was alleged to have been misled by

13    the defendants' advertising of its speakers.

14         And I would -- Your Honor doesn't know this, because

15    Your Honor's not familiar with me and my firm, specifically.

16    I've had a few matters in front of you.  But I certainly

17    understand the risk and the concern about a collusive

18    settlement where the attorneys' fees get paid -- where the

19    attorneys get paid, and the class gets sold out with a huge

20    release, where a case that started out small and was expanded

21    to, you know, include claims that were never contemplated, or

22    include nationwide status when they were really seeking

23    California-only status.  I'm familiar with all of those

24    concerns.

25         And, and I would posit that I would have to be crazy to
```

1   put a settlement like that together and try to get it past this

2   Court.  And I would never do that.  But --

3           **THE COURT:**  That part is true.  That part is true.

4           **MR. BALABANIAN:**  I would have to be crazy, because

5   I'm familiar with this court.

6           **THE COURT:**  You would have to be crazy.

7           **MR. BALABANIAN:**  Yes.

8           **THE COURT:**  But part of the rational process is to

9   see if you've got a legitimate class before we talk

10  settlement.

11          **MR. BALABANIAN:**  Certainly.  And we can do that.  But

12  I'm -- you know, if the Court -- we have not committed to

13  stopping discovery in this case and not seeking the necessary

14  information to evaluate --

15          **THE COURT:**  What is the gravamen of your complaint in

16  this case?  What was the advertising problem?

17          **MR. BALABANIAN:**  The advertising problem was, as it

18  relates to speakers, advertising that the technical

19  specifications of the speakers were greater than they were.

20  It comes down to the speaker drivers.

21          **THE COURT:**  Like what?

22          **MR. BALABANIAN:**  And they claim basically that there

23  were more drivers on the speaker than there were.

24          **THE COURT:**  How many drivers did they say there were?

25          **MR. BALABANIAN:**  Four.  And there were two, I

1    believe.  Todd -- Mr. Logan would know better.

2          **MR. LOGAN:**  Correct.  Four instead of two,

3    Your Honor.

4          **THE COURT:**  What is a driver?

5          **MR. BALABANIAN:**  It's the part of the speaker that

6    essentially creates the sound, Your Honor.

7          **THE COURT:**  So like the speaker.  It's the part that

8    has the electromagnet?

9          **MR. LOGAN:**  Yes, Your Honor.

10         **THE COURT:**  That is the driver?

11         **MR. LOGAN:**  Yes, Your Honor.

12         **THE COURT:**  And they said there were four, and there

13   were really just two?

14         **MR. LOGAN:**  That's exactly right, Your Honor.

15         **THE COURT:**  Is that true?  Is that what happened?

16         **MR. GIALI:**  Your Honor, the complaint at Paragraph 15

17   has a picture of the speakers.  The speakers do have two

18   driver outputs.  On each speaker, two of those drivers are

19   called "active," two of them are called "passive."

20        The passive driver does not have the electronics and the

21   sound box.  The sound goes through it.  So there are two

22   drivers on each speaker, only one of which is active.

23         **THE COURT:**  Well, wait.  How could it be a driver if

24    it's not active?

25         **MR. GIALI:**  Well, there is -- far be it from me to be

1  the expert on sound, Your Honor, but there is science about a

2  passive driver where sound passes through, and it does enhance

3  the bass.

4           **THE COURT:**  It could be parasitic.

5           **MR. GIALI:**  I'm sorry?

6           **THE COURT:**  It could be -- it's called "parasitic,"

7  is what you're saying.  In other words, you could have one

8  active element; the other one could be parasitic and actually

9  pick up the sound waves and do some good.  I'm familiar with

10  it.

11     Right?

12           **MR. LOGAN:**  Yes, Your Honor.

13           **THE COURT:**  As parasitics, so it could be -- in some

14  sense it could be considered a driver.

15           **MR. LOGAN:**  If I may, Your Honor.

16           **THE COURT:**  Go ahead.

17           **MR. LOGAN:**  I believe it would be called a "radiator"

18  at that point, which --

19           **THE COURT:**  Exactly.  Parasitic radiator.  And so

20  you're saying that that's fraudulent?

21           **MR. LOGAN:**  Yes, Your Honor.

22           **THE COURT:**  Why would that be?  Because it's not --

23  both are not active?

24           **MR. LOGAN:**  Yes, Your Honor.  They've taken a

25  traditional speaker component that is used in lots of

1    different speakers, and said it's a driver.  A driver creates

2    sound in every definition --

3         **THE COURT:**  Parasitic, a parasitic one would -- a

4    radiator would --

5         **MR. LOGAN:**  Yeah.

6         **THE COURT:**  -- sound.

7         **MR. LOGAN:**  Yeah, but that's not a driver.  It's not

8    creating sound; it's not a driver.  It's adjusting the

9    frequency of sound that's getting created.

10        **THE COURT:**  It is creating sound.  It is creating

11   sound.  It's vibrating, and creating sound in the process.

12   It's just not electronically driven.  And it may not be nearly

13   as effective as one that would be electronic.

14      So I'm not sure -- all right.  Anyway, I now understand

15   the general problem.

16      How have they have corrected this?

17        **MR. LOGAN:**  I look to Mr. Giali for that

18   representation.

19        **THE COURT:**  Well, you told me a minute ago they had

20   corrected it, and that's why you wanted to settle the case.

21        **MR. BALABANIAN:**  They've started to change --

22        **THE COURT:**  Started to change?  That's like "The

23   check is in the mail."

24        **MR. LOGAN:**  Your Honor, what they've represented to

25   us, in good faith, I understand, is that they have changed the

1    advertising copy.  So I'm -- I'm not going to put words in

2    Mr. Giali's mouth (Indicating), but my understanding is

3    they're no longer going to represent that the system has four

4    drivers.  They're just going to represent that it has two

5    drivers.

6             **THE COURT:**  I want to go through the normal Rule 23

7    process.  I want to see if the plaintiff is a legitimate

8    plaintiff.  I want to see if he's got standing.  I want to go

9    through the normal process.

10        I don't see any good reason -- I have appointed interim

11   counsel in other cases where the company is going out of

12   business, and you'd better get your money now while the getting

13   is good.  But that's not our case.

14        So I don't want you -- see, you lawyers ought to go out

15   there and do -- do the homework.  Find out if you have got

16   punitive damages, find -- you know, spend the money on behalf

17   of the class to do your due diligence.

18        So the motion for interim counsel on this record is

19   denied.

20        Okay, now, let's go to the -- have you done your initial

21   disclosures?

22             **MR. BALABANIAN:**  Yes, Your Honor.

23             **THE COURT:**  Sure you've done it right?

24             **MR. BALABANIAN:**  I believe so.

25             **THE COURT:**  All right.  Have you laid out the dollar

1   amounts?

2         **MR. BALABANIAN:**  Well, we've laid out our general

3   theory of damage, Your Honor.

4         **THE COURT:**  No, it's got to be dollar amounts.  Read

5   the rule?  Read the rule?

6         **MR. BALABANIAN:**  We have -- we have --

7         **THE COURT:**  If you don't comply with the rule, then

8   you don't have a case.  Why don't you just comply -- I'm going

9   to give you more time.  I want you to go back and -- and I can

10  tell you what the other side has done.  They have not given

11  you contact information for the witnesses they have

12  identified.  Right?  Right.

13     But the rule says "contact info."  So I'm going to give

14  you both a chance to go back and fix up what you've done.

15         **MR. BALABANIAN:**  Thank you, Your Honor.

16         **THE COURT:**  I'm going to give you until September

17  14th.

18         **MR. BALABANIAN:**  Thank Your Honor.

19         **THE COURT:**  Leave to add any new parties or pleading

20  amendments.  All right, we'll say November 29.

21     Okay, we're going to say February 7th for your motion for

22  class certification.  Unless you want to do it -- that's the

23  last day.  You can always do it sooner.  On a 49-day track.

24     June 28th next year will be your fact discovery cutoff.

25  That is also the day your expert reports are due, if you have

1 the burden of proof on the issue.

2   Last day to file a motion for summary judgment will be

3 August 1.

4   Final pretrial, October 9.  And then trial will be on

5 October 21.  Jury trial, 7:30 a.m.

6   Then, I will refer you to Magistrate Judge Ryu, Donna Ryu,

7 for mediation.  Now, she is probably not going to let you do

8 that mediation until we get a little farther along in the case,

9 but she -- you will be on her radar screen.

10   Now, with all that having been said, you can try to talk

11 me out of any of this, these dates and deadlines.  What would

12 you like to do?

13    **MR. BALABANIAN:**  No -- plaintiff is fine with those

14 deadlines, Your Honor.

15    **THE COURT:**  All right.

16    **MR. GIALI:**  Your Honor, defendant, as well.

17    **THE COURT:**  Great.  So, okay.  Thank you very much.

18    **MR. BALABANIAN:**  Thank Your Honor.

19    **THE COURT:**  Good luck to both sides.

20    **MR. BALABANIAN:**  Thank Your Honor.

21   (Proceedings concluded)

22

23

24

25

**CERTIFICATE OF REPORTER**

     I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*Belle Ball*

_____
/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Friday, August 31, 2018