# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES PORATH, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>LOGITECH, INC.,<br><br>*Defendant.* | Case No. 3:18-cv-03091-WHA<br><br>**DECLARATION OF TODD LOGAN IN RESPONSE TO THE COURT'S ORDER AT DKT. 63** |

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1. I am an attorney admitted to practice before this Court. I submit this declaration pursuant to the Court's Order at Dkt. 63. This declaration is based upon my personal knowledge unless otherwise indicated. If called upon to testify as to the matters stated herein, I could and would competently do so.

2. I am a fourth-year associate at Edelson PC, which has been retained to represent Plaintiff James Porath in this action. Along with Rafey S. Balabanian, Edelson PC's Managing Partner and General Counsel, I am one of Mr. Porath's two counsel of record. As an attorney with fewer than six years of experience and keeping in mind the Court's standing order, I have taken a leading role in litigating this case.

3. I have conferred extensively with Plaintiff and obtained his consent to make this filing, notwithstanding that it waives certain protected communications. Plaintiff has agreed to waive these communications only to the extent necessitated by this filing and its supporting exhibits.

4. The following four paragraphs provide my direct responses to the subjects I have been ordered to respond to pursuant to the Court's Order at Dkt. 63, page 2, lines 14-19. Following my sworn responses to the Court's inquiries, I provide further information for the Court's consideration, including the authentication of a large body of documentary evidence substantiating my responses and supporting an overriding point: I have at all times been forthright with the Court, have not withheld information, and—against the backdrop of a deeply regrettable error in due diligence—have acted ethically and with honesty before the Court with respect to this situation.

5. **First,** until September 25, 2019, at 6:07 p.m., I had no knowledge whatsoever of Mr. Porath's criminal history. To be completely clear, when I say "no knowledge whatsoever," I mean that until September 25, 2019, at 6:07 p.m., I did not know of, have any suspicions about, or otherwise have any inkling whatsoever regarding Mr. Porath's criminal history.

6. **Second,** since the entry of the Court's Order at Dkt. 63, I have personally spoken

with all other individuals at Edelson PC who have ever participated in any way in this case, and hereby attest that none of them had any knowledge whatsoever of Mr. Porath's criminal history until after I learned of the issue on September 25, 2019, at 6:07 p.m. To close the loop: I am confident that my September 25 discovery was the first moment in which anyone associated with Edelson PC—including those who have never spoken with Mr. Porath or worked on the case—had any knowledge whatsoever of Mr. Porath's criminal history.

7. **Third,** Plaintiff's criminal history was flagged—but not described in complete detail—in the September 26 filing because of the timing of my discovery and, relatedly, the time constraints we felt we were operating under as we were preparing to finalize Plaintiff's Motion for Class Certification and all supporting papers (which totaled twenty-seven (27) documents, including a detailed administrative motion to seal and many selectively redacted exhibits). Beginning in the evening of September 25 and then again during the morning of September 26, I discussed the subject with Mr. Balabanian, the firm's Managing Partner and General Counsel, and we agreed—and continue to agree—that our ethical obligations require that any high-profile filing proactively revealing in full Mr. Porath's criminal history must be carefully drafted and subject to substantial review and deliberation. Given the timing of my September 25 discovery, the impending class certification motion deadline (at noon the next day), and the amount of work still to be done before the motion would be ready for filing, we determined that we did not have the option of timely preparing such a disclosure. Consequently, we made the decision to preliminarily "front" the issue in Plaintiff's Motion for Class Certification (and Plaintiff's Declaration in support thereof), and to supplement the record the following week after further research into the issue (*i.e.*, once we had a better handle on the facts and circumstances surrounding Plaintiff's criminal history as well as this Court's previous opinions on the subject). That is the course of action we implemented. To be clear, and as is the subject of a separate declaration of mine, nothing about Defendant's emergency motion to the Ninth Circuit for a further stay pending a petition for writ of certiorari to the Supreme Court had any bearing whatsoever on our thinking, our decisions, our motion, or—more broadly—our approach to this entire issue.

8.     **Fourth,** I have been ordered to set forth the complete extent of Mr. Porath's criminal record. Dkt. 63 at 2:18-19. In compliance with that Order, shortly after the Court's entry of Dkt. 63, I requested that a paralegal at Edelson PC obtain and provide to me a full criminal background check on Mr. Porath using TransUnion's "TLO" feature. (To be clear, neither I nor anyone else at Edelson PC had ever before requested or seen Mr. Porath's criminal background check.) A true and accurate copy of the TLO report, which includes both criminal and traffic records, and records pertaining both to Mr. Porath and to other individuals who have similar names, is attached hereto as **Exhibit 1**. I also personally cross-referenced this report with the criminal record websites of the four counties—San Bernardino (CA), Riverside (CA), San Diego (CA), and Mohave (AZ)—identified within the TLO report as having processed Mr. Porath through their criminal systems. Attached as **Exhibits 2-5**, respectively, are true and accurate copies of printouts of relevant portions of those websites. Finally, on October 6, 2019, I spoke by phone with Mr. Porath regarding the San Diego, Riverside, and Mohave records, all of which were (i) previously unknown to me and (ii) not identified in Mr. Porath's declaration at Dkt. 61-2.[1] My analysis, based on that investigation, is as follows:

- **San Bernardino County (CA):** Mr. Porath's declaration at Dkt. 61-2 accurately identifies each non-traffic-infraction record Plaintiff has in San Bernardino County. As stated in Dkt. 61-2, Mr. Porath also has several—by my count, six (6)—traffic infractions in San Bernardino County, dating back to 2003. *See* **Exhibit 2.**

- **San Diego County (CA):** On December 20, 2004, Mr. Porath was arrested outside a Fry's electronics store on suspicion of shoplifting. To the extent any charges were ever filed, which remains unclear to me, they were dismissed within three days, when Mr. Porath was released. The records appear to have been expunged by San Diego County, *see* **Exhibit 3**, and I have been unable to locate any other information about the incident. Mr. Porath's declaration at Dkt. 61-2 does not identify this incident.

- **Riverside County (CA):** On September 1, 2009, Mr. Porath pleaded guilty to two misdemeanors in Riverside County: (i) Harassing by Telephone, and (ii) Contempt of Court. *See* **Exhibit 4.** As with the San Bernardino County incidents, these charges relate to a dispute with another man regarding that man's interactions with Mr. Porath's (now) ex-wife. Mr. Porath's declaration at Dkt. 61-2 does not identify these charges.

---

[1] To be clear, I also worked closely with Plaintiff in helping him prepare his declaration at Dkt. 61-2, including speaking by phone for more than an hour about his criminal history, but I did not learn of any of these three incidents until receiving and reviewing the TLO report.

DECLARATION OF TODD LOGAN   3   CASE NO. 3:18-CV-03091-WHA

- **Mohave County (AZ)**: On September 26, 2001, Mr. Porath was cited for allowing his younger brother's girlfriend, who was not licensed to drive, to drive a car the Plaintiff was a passenger in. *See* **Exhibit 5**. (My independent research indicates that is a misdemeanor in Arizona, though neither the TLO report nor the Mohave County website indicate as such.) When Mr. Porath, who lived in California, failed to pay the ticket or show up to a hearing, he was charged with a misdemeanor for his failure to appear. *See id.* The charges were dismissed in 2006 and the case was purged in 2012. Mr. Porath's declaration at Dkt. 61-2 does not identify these charges.

Mr. Porath testified at length about his criminal record at his deposition that took place on October 8, 2019, and in that deposition, attested that he had not informed me of the San Diego, Riverside, or Mohave incidents until our October 6, 2019 phone call because he had forgotten about them until I brought them up during that phone call (given that they were far older and much less serious incidents than his felony convictions, which we had discussed at length). Concurrently with the filing of this Declaration, Mr. Porath will be filing a supplemental declaration that addresses those incidents.

*     *     *

9. Being regarded as an ethical attorney before this Court is enormously important to me. I have made my home in San Francisco, and I plan to practice in this District, and surely before this Court, for the rest of my career. Consequently, in addition to simply providing sworn responses to the Court's inquiries, I provide further information for the Court's consideration, including the authentication of a substantial amount of documentary evidence that corroborates my sworn responses and supports an overriding point: that I have at all times been forthright with the Court, have not withheld information, and—against the backdrop of a deeply regrettable error in due diligence—have acted ethically and with honesty before this Court with regard to this situation.

10. Upon the filing of this case in 2018, I was assigned the role of lead associate for the case, and consequently participated substantially in tasks including drafting the initial joint case management statement, drafting the motion for appointment as interim class counsel, and helping Mr. Porath prepare his Rule 26 initial disclosures. In that capacity, I have also been Mr. Porath's primary point of contact at Edelson PC.

11.     Regarding the September 26 Motion for Class Certification, I was responsible for: (i) being Mr. Porath's point of contact throughout the process, and (ii) preparing proposed final drafts of the motion and all supporting documents for Mr. Balabanian's final pre-filing review. Two other more senior associates at Edelson PC had taken the lead on the initial drafting—my role was to be the gatekeeper and final reviewer before Mr. Balabanian's final pre-filing review, as well as to interface with Mr. Porath.

12.     At 2:57 p.m. on September 25, 2019, after speaking with Mr. Porath by phone, I sent Mr. Porath a draft of his declaration in support of class certification. Attached hereto as **Exhibits 6 and 7** are (i) a true and accurate copy of a screenshot of my DocuSign transmission to Mr. Porath, and (ii) the actual draft declaration I sent to Mr. Porath at that time. Turning the Court's attention specifically to Paragraph 8 of **Exhibit 6**, there is a statement: "I do not have a criminal background," which is evidence that I did not know of Mr. Porath's criminal history at that time.

13.     At 4:57 p.m. on September 25, 2019, I emailed Mr. Balabanian a proposed final draft of the Motion for Class Certification. Attached hereto as **Exhibits 8 and 9** are (i) a true and accurate copy of my email to Mr. Balabanian, and (ii) an excerpt of the Motion I sent to Mr. Balabanian at that time. Line 7 of the **Exhibit 9**, which states that Plaintiff has "no criminal convictions," is further evidence that I did not know of Mr. Porath's criminal history at that time.

14.     At 5:57 p.m. on September 25, 2019, I had not heard from Mr. Porath regarding his draft declaration, so I sent him a text message asking "How's it look?" Attached hereto as **Exhibit 10** is a true and accurate copy of that text message exchange with Mr. Porath.

15.     At 6:07 p.m. on September 25, 2019, Mr. Porath responded "Number 8 is incorrect" and then "Everything else looks good." *Id.* The remainder of the exchange, which show me asking to "call [Mr. Porath] quickly about that," and then explaining I would conduct "a bit of research to make sure we do this the right way," and then later providing a new draft declaration for his review, *see id.*, is also evidence that I learned of Mr. Porath's criminal history at 6:07 p.m. on September 25, 2019.

16. At 6:11 p.m. on September 25, 2019, in response to my text message, Mr. Porath called me, and we discussed Mr. Porath's criminal history. **Exhibit 11** is a true and accurate copy of a call log demonstrating that call. This call is even further evidence that I learned of Mr. Porath's criminal history at 6:07 p.m. on September 25, 2019.

17. At 6:14 p.m. on September 25, 2019, while speaking on the phone with Mr. Porath, I began performing internet searches from my computer regarding his criminal history. **Exhibit 12** is a true and accurate copy of a screenshot of my "Google Chrome" history from 6:09 p.m. through 6:29 p.m. on September 25, 2019. This search history is more evidence that I learned of Mr. Porath's criminal history at 6:07 p.m. on September 25, 2019. In case this is in any way ambiguous: at no earlier time had I ever researched Mr. Porath's criminal history.

18. I spent the next hour performing further factual research, speaking again with Mr. Porath to gather more facts, and trying to get ahold of Mr. Balabanian to share what I had just learned and obtain his instructions. **Exhibit 13** is a true and accurate copy of a call log with Mr. Porath showing that we spoke again at 7:01 p.m. **Exhibits 14 and 15** are true and accurate call logs of my unsuccessful attempts to reach Mr. Balabanian's cell phone (he had departed the office by that time). **Exhibit 16** is a true and accurate copy of text messages I sent to Mr. Balabanian, with me stating at 6:39 p.m. that there is a "problem in Porath," requesting that Mr. Balabanian call me, and alerting Mr. Balabanian that the problem was "urgent and substantial." All of these communications also serve as evidence that I first learned of Mr. Porath's criminal history at 6:07 p.m. on September 25, 2019.

19. I spoke with Mr. Balabanian by telephone at 7:13 p.m. **Exhibit 17** is a true and accurate copy of a call log showing that conversation. We discussed what I had learned and how best to proceed. Given the time constraints we were operating under (*i.e.*, the need to finalize twenty-seven (27) different documents in support of class certification), Mr. Balabanian's instructions were that while we would further discuss in the morning before he made a final decision as to how to proceed, for the evening I was to flag the criminal history issue in the motion (and to provide proposed language for Mr. Balabanian's review as soon as I had prepared it),

1 prepare proposed final drafts of all supporting papers, and circulate for review. **Exhibit 18** is a true
2 and accurate copy of a screenshot of a text message I sent to Mr. Balabanian at 8:04 p.m.,
3 proposing language to use for the "flagging" of the criminal history issue, which Mr. Balabanian
4 preliminarily approved of. **Exhibits 19 and 20** are true and accurate copies of my 8:50 p.m.
5 Docusign transmission to Mr. Porath containing an updated draft of his declaration, and the actual
6 declaration I sent, flagging his criminal history. These documents once again serve as evidence
7 that I first learned of Mr. Porath's criminal history at 6:07 p.m. on September 25, 2019.

8     20. At approximately 11:30 p.m. I sent drafts of the Motion for Class Certification to
9 both Mr. Balabanian and Mr. Porath. **Exhibits 21 and 22** are true and accurate copies of emails I
10 sent at approximately 11:30 p.m. to Mr. Balabanian and Mr. Porath, respectively, containing
11 proposed final drafts of the Motion. **Exhibit 23** is a true and accurate copy of the excerpt of the
12 Motion I sent. Lines 10-13 of that draft Motion, as compared to line 7 of **Exhibit 9,** further
13 demonstrate that I first learned of Mr. Porath's criminal history at 6:07 p.m. on September 25,
14 2019.

15     21. During the same 7:13 p.m. phone call described in paragraph 19, Mr. Balabanian
16 and I also discussed that, given what we had learned, it was imperative to allow Defendant to
17 promptly depose Mr. Porath. **Exhibit 18** is a true and accurate copy of a text message I sent to Mr.
18 Balabanian at 9:11 p.m., proposing that we offer to produce Mr. Porath for a deposition for either
19 of the following Tuesdays, and **Exhibit 24** is a true and accurate copy of an email I sent to
20 Defendant the following morning, following through with that plan. In conjunction with further
21 context I am about to provide, this is evidence both (i) that I learned of Mr. Porath's criminal
22 history at 6:07 p.m. on September 25, 2019, and (ii) that we proactively pursued full disclosure of
23 Mr. Porath's criminal record as quickly and as ethically practicable after my discovery. To provide
24 the Court that context: on September 20, 2019 (*i.e.*, 8 days after the Court set the class certification
25 deadline for September 26), and without meeting and conferring pursuant to Civil Local Rule 30-
26 1, Defendant noticed Plaintiff's deposition for October 1, 2019—the Tuesday *after* Plaintiff's
27 class certification deadline. Believing the notice unilaterally setting the deposition date was
28

DECLARATION OF TODD LOGAN        7        CASE NO. 3:18-CV-03091-WHA

improper, I had previously exchanged several relatively contentious emails with Defendant's counsel regarding their intent to depose Mr. Porath on October 1, 2019, and had not yet offered Defendant any dates for Mr. Porath's deposition. Upon learning of Mr. Porath's criminal history on the evening of September 25, 2019, however, Mr. Balabanian and I recognized there was no choice but to promptly offer Mr. Porath's deposition, as any other approach could risk the appearance that we had been hiding or were attempting to hide something, which we were not.

22. One final note regarding the evening of September 25, 2019: at approximately 10:15 p.m., as I was in the process of finalizing the class certification papers (and was, to be candid, substantially distracted by my discovery of Mr. Porath's criminal history), it occurred to me that I thought I remembered the Court flagging a concern about named plaintiffs with criminal histories at the August 23, 2018 hearing. I then retrieved and reviewed the transcript of that hearing, which confirmed my memory. The email I immediately sent to Mr. Balabanian (at 10:22 p.m), quoting the relevant portion of the transcript, captures my real-time reaction—in light of my discovery earlier that evening—to reading the Court's concern in the transcript: "unreal." **Exhibit 25** is a true and accurate copy of that email to Mr. Balabanian. To explain: as I contemplated the Court's prior comment, I recognized at that very moment just how bad the whole situation might outwardly look, notwithstanding that I had just learned about Plaintiff's criminal history earlier that evening. And to spell out what I mean when I say "how bad the whole situation might outwardly look," the point is that—at that moment—I realized the Court might conclude (i) that Mr. Balabanian and I had acted deceptively at the August 23, 2018 hearing, when we stood silent while the Court remarked about the risk of collusive of settlements when the class representative is secretly a convicted felon, and/or (ii) that we have acted deceptively or otherwise been less than forthright as we've stood by the sidelines while Defendant has pursued its various appeals. At bottom, it is vitally important to me and my colleagues that the Court understand that, putting aside the regrettable error in diligence that occurred here in terms of vetting Plaintiff at the outset of this case, we were silent on the issue of Plaintiff's criminal history until September 26, 2019, because we had *no knowledge whatsoever about it* until the evening of September 25, 2019.

23. Beginning early in the morning of September 26, 2019, Mr. Balabanian and I discussed the criminal history issue at length and repeatedly. I also spoke with Mr. Porath again, as evidenced by **Exhibit 26**, which is a true and accurate copy of a call log of our conversation that morning.

24. Throughout the morning, Mr. Balabanian and I considered a full range of options as to how best to proceed.

25. The gist of the decisions we made that morning are as follows. First, Mr. Porath was, in our view, and notwithstanding his criminal history, an adequate class representative with respect to the issues pertaining to this case. Second, preliminarily "fronting" Mr. Porath's criminal history, and then supplementing the record the following week after further research into the issue (*i.e.*, once we had a better handle on the facts and circumstances surrounding Plaintiff's criminal history as well as this Court's previous opinions on the subject), best served the interests of Mr. Porath and the putative class and was consistent with our ethical obligations. Third, that is the course of action we would implement.

26. To be clear, and as discussed further in my contemporaneously-filed supplemental declaration, as we made these decisions, we did not discuss, consider, or otherwise have in mind—in any way—Defendant's emergency motion to the Ninth Circuit for a further stay pending a petition for writ of certiorari. We had a lot on our plates that morning, and Defendant's emergency stay motion was not even remotely close to being on our radar.

27. Attached hereto as **Exhibit 27** is a true and accurate copy of an email sent by Mr. Balabanian to me at 10:45 a.m. on the morning of September 26, 2019, providing final signoff on a final draft of the class certification motion. Mr. Balabanian's note that it was "Too bad we have to deal with what we're dealing with" is, in context, evidence both that we had only just learned of Plaintiff's criminal history and also that we had determined to supplement the record with further information on the issue. (Attached as **Exhibit 28** is a follow-up email from Mr. Balabanian, sent eight minutes later, at 10:54 a.m., containing the final draft of the class certification motion, as Mr. Balabanian had inadvertently attached the wrong file to the prior email.)

28. After the class certification motion was on file, I spent the rest of September 26 first finishing some related administrative tasks (*e.g.*, serving opposing counsel with unredacted copies of our papers; emailing the Court a [Proposed] Order, and providing instructions to a paralegal for delivery of a courtesy copy), and then preparing for the following day's all-day, in-person meeting of the Official Committee of Tort Claimants in the PG&E bankruptcy proceedings. (Mr. Balabanian and I represent a victim of the 2018 Camp Fire who sits on the eleven-member Committee, as well as many other victims of the 2018 Camp Fire.).

29. I spent substantially all of the September 27 workday at the above-described in-person meeting of the Official Committee of Tort Claimants in the PG&E bankruptcy proceedings.

30. From the evening of September 27 through the afternoon of September 29, I was out of town attending the wedding of two friends (and did not work).

31. When I returned to the office on Monday, September 30, 2019, I spent the morning digging out of my email backlog and attending to tasks related to the PG&E bankruptcy matter. In the afternoon, I turned back to this case. I researched and analyzed disclosure obligations related to Mr. Porath's criminal history under relevant precedent, including this Court's Order at Dkt. 16 and the Court's opinions in *Dunford v. Am. DataBank, LLC*, 64 F. Supp. 3d 1378, 1397 (N.D. Cal. 2014) and *Hawkins v. S2Verify*, 2016 WL 3999458, at *5 (N.D. Cal. July 26, 2016). I then wrote a first draft of the Response ultimately entered at Dkt. 61, which I emailed to Mr. Balabanian at 9:21 p.m. **Exhibit 29** is a true and accurate copy of the email I sent to Mr. Balabanian with the draft.

32. I spent the bulk of Tuesday, October 1, 2019, focused on this matter. Over the course of the day, Mr. Balabanian and I exchanged four (4) rounds of edits to the proposed Response. I also spoke to Mr. Porath by telephone four (4) different times, totaling more than an hour, as I drafted Mr. Porath's declaration (ultimately filed at Dkt. 61-2) for his review.

33. On Wednesday, October 2, 2019, Mr. Balabanian and I exchanged two more sets of revisions to the proposed Response, and also conferred with Jay Edelson—Edelson PC's CEO—to obtain his perspective and comments on the proposed Response.

1    34.    Also on Wednesday, October 2, 2019, I emailed Mr. Porath twice and spoke with
2 him by phone again, for seventeen minutes, as we finalized his declaration. **Exhibit 30** is a true
3 and accurate copy of a screenshot of a Docusign transmission showing that Mr. Porath executed
4 the final draft of his declaration at 12:39 p.m. **Exhibit 31** is a true and accurate copy of my email
5 exchange with Mr. Porath, including his sign-off on all filings at 1:56 p.m. We filed the Response
6 at Dkt. 61 just over an hour later.

7    35.    On Thursday, October 3, 2019, at 4:49 p.m.— eight minutes *before* the Court's
8 Order at Dkt. 63 was entered at 4:57 pm.—Jay Edelson sent an "all firm" email newsletter update
9 to every employee at Edelson PC.[2] The email provided an overview of recent developments in
10 thirteen (13) different active matters at the firm. Its final substantive section was titled "Lessons to
11 Remember," and in that section Mr. Edelson discussed this case (and this case only). Below is a
12 true and accurate screenshot of that section, showing what Mr. Edelson had to say in terms of the
13 lessons the firm should take away from this case:

> **LESSONS TO REMEMBER**
> Logitech
>
> We stepped in some poo on Logitech. For those that remember, Judge Alsup refused to let us negotiate on behalf of the class before we got a class certified. One of his reasons was that we might settle on the cheap because of a hidden issue with the class representative. Right before filing for class cert, we found out that our class rep has a criminal history. While this is not disqualifying, we should have caught it before and told the court when it discussed its concerns. We filed a pro-active brief admitting our mistake and letting the Court know of our suggested paths forward. (Todd -- if you've gotten this far, can you send around the brief?). A couple of points: 1 - we have to do better in terms of vetting class members. Once is a problem. Twice is a catastrophe. Second, when mistakes happen, the best thing to do is to come clean immediately and fully. I think our brief does this well.

    36.    Though Mr. Edelson's email could of course be challenged by a skeptical reader (*i.e.* as a post-hoc rationalization or some sort of preemptive defense), given all of the evidence I have provided above, given that it was sent *prior* to the Court's Order at Dkt. 63, and given that it

---

[2] Because this email contains a variety of attorney work product related to other matters, and also discloses non-public information about Edelson PC's representation of and work with certain government entities, I am unable to e-file the email. However, I intend to bring a true and accurate copy of the email to the November 14 hearing, and to offer it for the Court's *in camera* review.

was emailed to literally all of Edelson PC as a "Lesson to Remember," I respectfully contend that the email is good evidence both: (i) that I learned of Mr. Porath's criminal history at 6:07 p.m. on September 25, 2019, and (ii) that we proactively pursued swift and full disclosure of Mr. Porath's criminal record as soon as we learned about it.

37. Finally, I want to make clear to the Court that I am not submitting this declaration to make excuses. I agree with Mr. Edelson and Mr. Balabanian that we should have known about Mr. Porath's criminal history before we did, and I should have provided Mr. Porath a draft of his declaration more promptly than I did here. In the future, I will ensure that I am familiar with any client's criminal history well before putting him or her forward as a potential class representative, and I will likewise be more diligent in ensuring that clients have ample lead-time to review their declarations. I apologize to the Court for my failings in this regard.

38. I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 10, 2019, at San Francisco, California.

                                        /s/ Todd Logan
                                        Todd Logan