# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES PORATH, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>LOGITECH, INC.,<br><br>*Defendant*. | Case No. 3:18-cv-03091-WHA<br><br>**SUPPLEMENTAL DECLARATION OF TODD LOGAN IN RESPONSE TO THE COURT'S ORDER AT DKT. 63** |

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1. I am an attorney admitted to practice before this Court. I submit this declaration pursuant to the Court's Order at Dkt. 63. This declaration is based upon my personal knowledge unless otherwise indicated. If called upon to testify as to the matters stated herein, I could and would competently do so.

2. I am a fourth-year associate at Edelson PC, which has been retained to represent Plaintiff James Porath in this action. Along with Rafey S. Balabanian, Edelson PC's Managing Partner and General Counsel, I am one of Mr. Porath's two counsel of record. As an attorney with fewer than six years of experience and keeping in mind the Court's standing order, I have taken a leading role in litigating this case.

3. I have conferred extensively with Plaintiff and obtained his consent to make this filing, notwithstanding that it waives certain protected communications. Plaintiff has agreed to waive these communications only to the exact extent necessitated by this filing and its supporting exhibits.

4. Though I believe my contemporaneously-filed other declaration may fulfill my obligations pursuant to the Court's Order at Dkt. 63, because I read the Order as potentially requiring two separate declarations from me, this declaration responds directly to the subject I was ordered to respond to pursuant to the Court's Order at Dkt. 63, at page 2 (line 28) through page three (line 2).

5. The following paragraph provides my direct response to the Court's inquiry. In addition to providing my sworn response, I then provide further information for the Court's consideration, including the authentication of documentary evidence substantiating my response and supporting an overriding point: I have at all times been forthright with the Court, have not withheld information, and—against the backdrop of a deeply regrettable error in due diligence— have acted ethically and with honesty before this Court with regard to this situation.

6. The full extent to which the pendency of Defendant's emergency motion to the Ninth Circuit for a further stay pending a petition for a writ of certiorari was relevant to my

thought process or decisions regarding disclosure of Mr. Porath's criminal history, both in Dkt. 57 and in Dkt. 61, was: **zero.** So as to avoid any ambiguity, neither the pendency nor the denial of Defendant's stay motion had *any bearing whatsoever* on my thinking or decisions related to the disclosure of Mr. Porath's criminal history—whether timing-related, substance-related, or otherwise—in either the class certification motion or the Response filed at Dkt. 61. In other words, Defendant's stay motion was, at all times, completely irrelevant.

        *        *        *

7. Being regarded as an ethical attorney before this Court is enormously important to me. I have made my home in San Francisco, and I plan to practice in this District, likely frequently before this Court, for the rest of my career. Consequently, in addition to simply providing my sworn response to the Court's inquiry, below I provide further information for the Court's consideration, including the authentication of documentary evidence, substantiating my responses and supporting the notion that I have at all times acted with the utmost integrity, honesty, and ethics.

8. I first learned of Defendant's intention to seek a further stay pending a petition for a writ of certiorari just after 4:55 p.m. on September 24, 2019, when I received a call from Defendant's counsel. **Exhibit 1** is a true and accurate copy of a call log showing that call. Twenty minutes later, I emailed Defendant's counsel confirming my understanding of the call and requesting that Defendant's counsel provide a copy of the motion for our review such that we could provide our position (Defendant's counsel did not provide a copy of the motion). **Exhibit 2** is a true and accurate copy of that email and Defendant's counsel's response. As this email exchange shows, while I had understood on the phone that Defendant was pursuing *en banc* review, Defendant apparently had chosen to proceed directly to a writ of certiorari.

9. I thought Defendant's motion was absurd and futile. Internal emails I sent to other attorneys at Edelson PC indicate my belief. Two minutes after Defendant's counsel's email stating Defendant's intent to pursue a further stay pending a petition for a writ of certiorari, at 5:50 p.m., I forwarded Defendant's email to other attorneys at my firm and commented simply "lol." **Exhibit**

**3** is a true and accurate copy of that email. I would much prefer not to have to publicly file an internal firm e-mail like this, particularly where I make such a flippant remark. But it is, regrettably, the best evidence I have that I did not give any credence to Defendant's motion. And I note that while this internal email—and others I describe below—are perhaps not a model of professionalism, they did candidly reflect my real-time opinions regarding these issues.

10. Later in the evening, at 10:25 p.m., I retrieved Defendants' motion from PACER, and forwarded the motion to other attorneys at my firm and wrote "Up next … the World Court!"—a joke meant to indicate my opinion that Defendant's motion was absurd and futile. **Exhibit 4** is a true and accurate copy of that email.

11. As I worked to finalize Plaintiff's Motion for Class Certification and supporting documents on September 25, 2019, I had a lot on my plate, and Defendant's Ninth Circuit stay motion was not even remotely close to being on my radar.

12. As established more fully in my other contemporaneously-filed declaration, I first learned of Mr. Porath's criminal history on September 25, 2019, at 6:07 p.m.

13. Just over an hour later, I spoke by phone with Mr. Balabanian, and we discussed that given what we had learned, it was imperative to allow Defendant to promptly depose Mr. Porath. **Exhibit 5** is a true and accurate copy of a call log of that phone call. **Exhibit 6** is a true and accurate copy of a text message I sent to Mr. Balabanian at 9:11 p.m., proposing that we offer Mr. Porath's deposition for either of the following Tuesdays, and **Exhibit 7** is a true and accurate copy of an email I sent to Defendant the following morning, following through with that plan.

14. In conjunction with further context I am about to provide, the above is evidence that I was not avoiding disclosure of Mr. Porath's criminal record based on any hope that the Ninth Circuit might enter a further stay. To provide the Court that context: on September 20, 2019 (*i.e.*, 8 days after the Court set the class certification deadline for September 26), and without meeting and conferring pursuant to Civil Local Rule 30-1, Defendant noticed Mr. Porath's deposition and unilaterally set the date for October 1, 2019—the Tuesday *after* Plaintiff's class certification deadline. Believing the notice unilaterally setting the deposition date was an

improper, I had previously exchanged several relatively contentious emails with Defendant's counsel regarding their intent to depose Mr. Porath on October 1, 2019, and had not yet offered Defendant any alternative dates for Mr. Porath's deposition. **Exhibit 8**, which is a true and accurate copy of an email I sent to Defendant at 6:05 p.m. on September 24, 2019, is one such email. Upon learning of Mr. Porath's criminal history on the evening of September 25, 2019, however, Mr. Balabanian and I recognized there was no choice but to promptly offer Mr. Porath's deposition, as any other approach could risk the appearance that we had been hiding or were attempting to hide something (*e.g.*, Mr. Porath's criminal history).

15. To summarize my point with the preceding paragraph: I respectfully contend that an attorney hoping to hide his client's criminal history, potentially through the possibility of the Ninth Circuit entering a further stay, would not have reacted to the discovery of Mr. Porath's criminal history by immediately offering opposing counsel the opportunity to promptly depose Mr. Porath (particularly when opposing counsel had not properly noticed Mr. Porath's deposition).

16. When Mr. Balabanian authorized the filing of the final draft of Plaintiff's Motion for Class Certification on the morning of September 26, 2019, he noted that it was "[t]oo bad we have to deal with what we're dealing with." **Exhibit 9** is a true and accurate copy of that email. In conjunction with all the other evidence provided in this declaration and my contemporaneously-filed other declaration, Mr. Balabanian's comment is evidence that we had already decided that we would be further supplementing the record regarding Mr. Porath's criminal history, after further research into the issue. Consequently, this is likewise evidence that we were not waiting for the Ninth Circuit to adjudicate Defendant's emergency motion before deciding to supplement the record.

17. On Friday, September 27, 2019, at 9:51 a.m., I learned that Defendant's emergency motion had been denied when another associate at Edelson PC, who focuses on appellate matters, forwarded to me the Ninth Circuit's Order. **Exhibit 10** is a true and accurate copy of that email. The development was completely irrelevant to my thinking about the issue of disclosure of Mr. Porath's criminal record. I did not reply to that email, forward it to anyone else, or otherwise

contemplate the import of the Order. Truth be told, that day, I was focused exclusively on the PG&E Bankruptcy proceedings, as I was attending and participating in an in-person, all-day meeting of the Official Committee of Tort Claimants in the PG&E bankruptcy proceedings. (Mr. Balabanian and I represent a victim of the 2018 Camp Fire who sits on the eleven-member Committee. We also represent hundreds of other victims of the 2018 Camp Fire.)

18. From the evening of September 27 through the afternoon of September 29, I was out of town attending the wedding of two friends (and did not work).

19. As established more fully in my contemporaneously-filed other declaration, I spent the bulk of the September 30 and October 1 drafting the Response ultimately filed at Dkt. 61.

20. At 6:52 p.m. on October 1, 2019, Defendant's counsel emailed me to apprise me that Defendant had, apparently earlier that day, filed an Application directly to the United States Supreme Court seeking a further stay of these proceedings. **Exhibit 11** is a true and accurate copy of that email (including my forwarded response to it). Just as with Defendant's emergency motion to the Ninth Circuit for a further stay pending a petition for a writ of certiorari, I thought Defendant's application directly to the United States Supreme Court was absurd and futile, as evidenced by **Exhibit 11**, which shows me forwarding Defendant's email to other attorneys at my firm, and commenting "lol (again)." I note—again—that while this internal emails is perhaps not a model of professionalism, it was sent only to Edelson PC attorneys, and candidly reflects my real-time opinions regarding these issues.

21. Though I thought Defendant's application to the Supreme Court was just as futile as Defendant's emergency stay motion to the Ninth Circuit, the fact that we filed Dkt. 61 the following day (Wednesday, October 2, 2019), rather than waiting to see if Defendant's application might be granted, is at least some evidence that a hope for a further stay—whether from the Ninth Circuit or the Supreme Court—played no part in the timing of our disclosures regarding Mr. Porath's criminal history.

22. On October 3, 2019, at 4:49 p.m.— eight minutes *before* the Court's Order at Dkt. 63 was entered at 4:57 pm.—Jay Edelson sent an "all firm" email newsletter update to every

DECLARATION OF TODD LOGAN        5        CASE NO. 3:18-CV-03091-WHA

employee at Edelson PC.[1] The email provided an overview of recent developments in thirteen (13) different active matters at the firm. Its final substantive section was titled "Lessons to Remember," and in that section Mr. Edelson discussed this case (and this case only). Below is a true and accurate screenshot of that section, showing what Mr. Edelson had to say in terms of the lessons the firm should take away from this case:

> **LESSONS TO REMEMBER**
>
> **Logitech**
>
> We stepped in some poo on Logitech. For those that remember, Judge Alsup refused to let us negotiate on behalf of the class before we got a class certified. One of his reasons was that we might settle on the cheap because of a hidden issue with the class representative. Right before filing for class cert, we found out that our class rep has a criminal history. While this is not disqualifying, we should have caught it before and told the court when it discussed its concerns. We filed a pro-active brief admitting our mistake and letting the Court know of our suggested paths forward. (Todd -- if you've gotten this far, can you send around the brief?). A couple of points: 1 - we have to do better in terms of vetting class members. Once is a problem. Twice is a catastrophe. Second, when mistakes happen, the best thing to do is to come clean immediately and fully. I think our brief does this well.

23. Though Mr. Edelson's email could of course be challenged by a skeptical reader (*i.e.* as a post-hoc rationalization or some sort of preemptive defense), given all of the evidence I have provided above, given that it was sent *prior* to the Court's Order at Dkt. 63, and given that it was emailed to literally all of Edelson PC as a "Lesson to Remember," I respectfully contend that the email is good evidence both: (i) that I learned of Mr. Porath's criminal history at 6:07 p.m. on September 25, 2019, and (ii) that we proactively pursued swift and full disclosure of Mr. Porath's criminal record as soon as we learned about it (without regard to the status of any appellate proceedings).

24. Finally, I want to make clear to the Court that I am not submitting this declaration to make excuses. I agree with Mr. Edelson and Mr. Balabanian that we should have known about Mr. Porath's criminal history before we did, and I should have provided Mr. Porath a draft of his

---

[1] Because this email contains a variety of attorney work product related to other matters, and also discloses non-public information about Edelson PC's representation of and work with certain government entities, I am unable to e-file the email. However, I intend to bring a true and accurate copy of the email to the November 14 hearing, and to offer it for the Court's *in camera* review.

declaration more quickly than I did. In the future, I will ensure that I am familiar with any client's criminal history well before putting him or her forward as a potential class representative, and I will likewise be more diligent in ensuring that clients have ample lead-time to review declarations. I apologize to the Court for my failings in this regard.

25. I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 10, 2019, at San Francisco, California.

                                           /s/ Todd Logan
                                           Todd Logan