1  MAYER BROWN LLP
   DALE J. GIALI (SBN 150382)
2  dgiali@mayerbrown.com
   KERI E. BORDERS (SBN 194015)
3  kborders@mayerbrown.com
   REBECCA B. JOHNS (SBN 293989)
4  rjohns@mayerbrown.com
   350 South Grand Avenue, 25th Floor
5  Los Angeles, CA 90071
   Telephone: (213) 229-9500
6  Facsimile: (213) 625-0248

7  Attorneys for Defendant
   LOGITECH INC.

8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12

13  JAMES PORATH, individually on behalf of all      Case No. 3:18-cv-03091-WHA
    others similarly situated individuals,
                                                     **DEFENDANT LOGITECH INC.'S**
14                        Plaintiffs,                **OPPOSITION TO PLAINTIFF'S**
                                                     **MOTION FOR CLASS**
15        v.                                         **CERTIFICATION**

16  LOGITECH, INC., a California corporation,        [*Declarations of Philippe Depallens and
                                                     Keri E. Borders and [Proposed] Order filed
17                        Defendant.                 concurrently herewith*]

18                                                   Date: November 14, 2019
                                                     Time: 8:00 a.m.
19                                                   Location: Courtroom 12 – 19th Floor

20                                                   Hon. William Alsup

21                                                   Action Filed: May 23, 2018

22

23

24

25

26

27

28

                                1

1

## STATEMENT OF ISSUES TO BE DECIDED

2

3   1.   Whether class certification should be denied because exposure to the alleged advertising
4        was not uniform throughout the class.
5   2.   Whether class certification should be denied because plaintiff lacks classwide evidence of
6        materiality and deception.
7   3.   Whether class certification should be denied because plaintiff cannot calculate damages
8        on a classwide basis.
9   4.   Whether class certification should be denied because plaintiff's claims are not typical of
10       the class as he lacks standing under the UCL, FAL, and CLRA, and his claims are
11       otherwise subject to unique defenses.
12  5.   Whether to deny certification of plaintiff's nationwide class.
13  6.   Whether to deny certification of plaintiff's common law fraud claim.
14  7.   Whether class certification should be denied because plaintiff's class definition is
15       overbroad, and is neither objective nor administratively feasible.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ...................................................................................................... 1

II.   FACTUAL BACKGROUND .................................................................................... 3

    A.    The Evolution Of The Z200 .......................................................................... 3

    B.    The History and Purpose Of The Passive Driver ........................................... 4

    C.    The Challenged "Two Drivers" Language ..................................................... 6

    D.    Evidentiary Objections .................................................................................. 8

III.  PLAINTIFF'S MOTION FOR CLASS CERTIFICATION SHOULD BE
     DENIED.......................................................................................................................... 8

    A.    Legal Standard For Class Certification......................................................... 8

    B.    Certification Is Inappropriate Because Common Factual And Legal Issues
       Do Not Predominate ...................................................................................... 9

        1.    Class Members Were Not Uniformly Exposed To The Alleged
           Deceptive Advertising .............................................................................. 9

        2.    Plaintiff Has No Classwide Evidence Of Materiality Or Deception ....... 12

        3.    Plaintiff Cannot Calculate Damages On A Classwide Basis ................... 15

           a.    The Damage Calculation Is Disconnected From Plaintiff's
              Theory Of Liability..................................................................... 15

           b.    Plaintiff's Damage Calculation Is Not Reliable........................... 16

    C.    Plaintiff's Claims Are Not Typical Of The Class ......................................... 18

        1.    Plaintiff Lacks Standing Under The UCL, FAL, And CLRA ................. 19

        2.    Plaintiff's Claims Are Subject To Unique Defenses .............................. 20

    D.    Plaintiff's Nationwide Class Cannot Be Certified ....................................... 20

    E.    Plaintiff's Common Law Fraud Claim Is Unsuitable For Class
       Certification ................................................................................................. 23

    F.    A Class Action Is Not Superior Because Plaintiff's Class Definition Is
       Overbroad, And Not Objective Or Administratively Feasible ........................... 24

IV.   CONCLUSION........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*,
  2017 WL 2559615 (C.D. Cal. June 7, 2017) ............................................................12, 13, 14

*Allen v. Conagra Foods, Inc.*,
  2019 WL 3302821 (N.D. Cal. July 22, 2019).........................................................................12

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013)...............................................................................................................8

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...............................................................................................................9

*Andren v. Alere, Inc.*,
  2017 WL 6509550 (S.D. Cal. Dec. 20, 2017).................................................................21, 23

*Ang v. Bimbo Bakeries USA, Inc.*,
  2018 WL 4181896 (N.D. Cal. Aug. 31, 2018) ......................................................................24

*Archie v. Pop Warner Little Scholars, Inc.*,
  2019 WL 4439493 (C.D. Cal. Sept. 11, 2019) .....................................................................10

*Badella v. Deniro Mktg. LLC*,
  2011 WL 5358400 (N.D. Cal. Nov. 4, 2011) .......................................................................24

*Brickman v. Fitbit, Inc.*,
  2017 WL 5569827 (N.D. Cal. Nov. 20, 2017) .....................................................................23

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) .............................................................................................24

*Bruton v. Gerber Prods. Co.*,
  2018 WL 1009257 (N.D. Cal. Feb. 13, 2018) ......................................................................18

*Caro v. Proctor & Gamble Co.*,
  18 Cal. App. 4th 644 (1993) .................................................................................................14

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)............................................................................................................8, 15

*In re ConAgra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) .........................................................................................18

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Darisse v. Nest Labs, Inc.*,
2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) ...........................................................11, 21, 22

*Davis-Miller v. Auto. Club of S. Cal.*,
201 Cal. App. 4th 106 (2011) ...........................................................................................10

*Dickey v. Advanced Micro Devices, Inc.*,
2019 WL 251488 (N.D. Cal. Jan. 17, 2019) ................................................................14, 15

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ...............................................................12, 14, 16, 23

*Gartin v. S & M NuTec LLC*,
245 F.R.D. 429 (C.D. Cal. 2007) ....................................................................................23

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ...........................................................................................19

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) .........................................................................................19

*Jones v. ConAgra Foods, Inc.*,
2014 WL 2702726 (N.D. Cal. June 13, 2014) ..................................................................18

*Kaldenbach v. Mutual of Omaha Life Ins. Co.*,
178 Cal. App. 4th 830 (2009) ..........................................................................................22

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal.4th 1134 (2003) ....................................................................................................16

*Kosta v. Del Monte Foods, Inc.*,
308 F.R.D. 217 (N.D. Cal. 2015) ...............................................................................12, 14

*Kwikset Corp. v. Super. Ct.*,
51 Cal.4th 310 (2011) ......................................................................................................19

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003) .........................................................................................19

*Lucas v. Breg, Inc.*,
212 F. Supp. 3d 950 (S.D. Cal. 2016) ..............................................................................14

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ...............................................................................21, 22, 23

1

### TABLE OF AUTHORITIES
(continued)

2

**Page(s)**

3

4

*McCann v. Foster Wheeler, LLC*,
    48 Cal.4th 68 (2010) ...........................................................................................................21

5

*Melendres v. Arpaio*,
    784 F.3d 1254 (9th Cir. 2015) ...........................................................................................19

6

7

*In re NJOY, Inc. Consumer Class Action Litig.*,
    120 F. Supp. 3d 1050 (C.D. Cal. 2015) ............................................................................11

8

*Ono v. Head Racquet Sports USA, Inc.*,
    2016 WL 6647949 (C.D. Cal. Mar. 8, 2016) ....................................................................23

9

10

*Park v. Webloyalty.com, Inc.*,
    2019 WL 1227062 (S.D. Cal. Mar. 15, 2019) ...................................................................25

11

*Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*,
    2016 WL 5920345 (C.D. Cal. June 23, 2016) ...................................................................14

12

13

*Risinger v. SOC LLC*,
    708 F. App'x 304 (9th Cir. 2017) ......................................................................................12

14

*Sanchez v. Wal Mart Stores, Inc.*,
    2009 WL 1514435 (E.D. Cal. May 28, 2009) ...................................................................20

15

16

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ...............................................................................21

17

*Schroeder v. Envoy Air, Inc.*,
    2017 WL 3835804 (C.D. Cal. Aug. 30, 2017) ..................................................................24

18

19

*Shanks v. Jarrow Formulas, Inc.*,
    2019 WL 4398506 (C.D. Cal. Aug. 27, 2019) ..............................................................9, 12

20

*Spacone v. Sanford, L.P.*,
    2018 WL 4139057 (C.D. Cal. Aug. 9, 2018) ....................................................................19

21

22

*Spacone v. Sanford, LP*,
    2019 WL 1150068 (9th Cir. Jan. 11, 2019) .......................................................................19

23

24

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ...........................................................................................10

25

26

*Torres v. Mercer Canyons, Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ...........................................................................................25

27

28

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Townsend v. Monster Beverage Corp.*,
    303 F. Supp. 3d 1010 (C.D. Cal. 2018) ...................................................................12

*In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*,
    2019 WL 2521958 (D.N.J. June 18, 2019) ........................................................12, 15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)................................................................................................8, 9

*Wilkins v. Nat'l Broad. Co.*,
    71 Cal. App. 4th 1066 (1999) ....................................................................................22

*Wysong Corp. v. APN, Inc.*,
    889 F.3d 267 (6th Cir. 2018) .....................................................................................13

**Statutes**

Cal. Bus. & Prof. Code § 17208 ...........................................................................................21

Cal. Code of Civ. Proc. § 338 ...............................................................................................22

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

I.       **INTRODUCTION**

Three and a half years ago, plaintiff James Porath purchased a set of Logitech Z200 speakers for $17.99 to use with his personal computer. Because the speakers fully met his expectations for things such as sound, volume, input jacks, size and looks – and have worked without fail since the day he took delivery – plaintiff readily acknowledged in his October 8, 2019 deposition that he received full value for the price paid. Despite his overall satisfaction with his Z200 speakers and utter lack of injury, plaintiff filed this lawsuit because the Newegg.com website he purchased them on said the Z200 speakers had "two drivers per satellite." Plaintiff contends that the "two drivers" statement is literally false because one of the drivers per satellite is a passive radiator. Significantly, at the time he purchased the Z200s, plaintiff was entirely unaware of passive radiator technology. He assumed that all speaker cones simply had to have all the parts of an ***active*** driver (each cone with its own magnet, voice coil and power source), even though ***nothing*** in the advertising he saw or any other advertising associated with the Z200 says that. It was not until after his initial communication with his lawyers in May 2018 that he even became aware of passive radiator technology.

It is no surprise that a lawsuit alleging false advertising regarding speaker drivers – where plaintiff was entirely unaware of the passive radiator technology used in the challenged product and where the challenged advertising makes ***no*** representations that the drivers are active – necessarily collapses on itself. For present purposes, though, plaintiff's motion for class certification on this deficient theory of deception fails for many reasons, primarily because individualized issues predominate:

- *Plaintiff provides no evidence that class members were exposed to uniform advertising*. Plaintiff points to exactly two consumer facing advertisements (from the websites Newegg.com and OfficeDepot/OfficeMax.com) that allegedly contained the challenged "two drivers" language. But these two websites account for less than 3% of all sales. Plaintiff does not account for the substantial number of consumers who purchased the Z200 via (i) brick-and-mortar stores where the speaker drivers are referenced on the box *with an express statement that some are passive*, or (ii) other third-party retailer websites that did not feature the two drivers

1

language at all.

- *Plaintiff provides no classwide evidence of deception*. The Z200 contains one passive radiator per satellite, which provides bass extension that allows the Z200 to provide fuller, richer sound quality in its compact PC speaker size. To be sure, plaintiff and his counsel claim that the Z200 is falsely advertised as having four active drivers. But his only evidence of that is his own subjective, out-of-context interpretation of the word driver. This is insufficient to show what *other* consumers think. Plaintiff is required to come forward with evidence demonstrating that a substantial number of consumers, acting reasonably, were deceived in the manner plaintiff alleges by the drivers statement. Plaintiff doesn't come close to doing that.

- *Plaintiff provides no classwide evidence of materiality*. Plaintiff has no admissible evidence – no survey, no consumer research, no expert testimony – that the two drivers statement (as interpreted by plaintiff or otherwise) was material to a reasonable consumer's purchasing decision. Without such evidence, plaintiff is not entitled to a classwide presumption of reliance.

- *Plaintiff provides no reliable methodology for calculating damages on a classwide basis*. Plaintiff's counsel sponsors a calculation of damages based on the supposed difference in the average wholesale prices between the Z200 and an alleged "comparable" product (the Z150) and declares that the entirety of the difference is the average damages per purchase. The assertions are unsupported and unsupportable. First, plaintiff's "comparable" product is not comparable for purposes of plaintiff's damage analysis. Second, the calculation of the alleged price differential does not account for the actual prices paid by consumers, including plaintiff, who purchased a refurbished Z200 at a significant price discount.

If these fundamental defects were not enough, plaintiff's motion also fails because his claims are not typical of other class members, subjecting him to unique defenses that make him unsuitable as a class representative. Moreover, plaintiff's vague and overbroad class definition illustrates that class treatment is not a superior method of adjudicating plaintiff's claims. Finally, and as a matter of law, plaintiff is not entitled to certify a nationwide class under his California consumer protection and common-law fraud claims. For these and other reasons, as detailed below, plaintiff's motion for class certification should be denied.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.   FACTUAL BACKGROUND

### A.   The Evolution Of The Z200

Consumers buy Logitech speakers for many reasons, including the brand, consistently high consumer and expert reviews, price, size, controls, looks, recommendation, and prior experience with the product. Declaration of Philippe Depallens ("Depallens Decl.") at ¶ 7; Transcript of the October 8, 2019 Deposition of Plaintiff James Porath ("Porath Tr."), cited excerpts attached as Exhibit 11 to the Declaration of Keri E. Borders ("Borders Decl."), at. 33:4-14, 33:25-34:9, 34:11-17, 35:12-13, 35:20-22; 36:1-3, 80:25-81:19. 101:25-102:1, 113:7-12; 125:24-25 (price); 35:4-6, 35:11-12, 35:23-25; 98:12-18, 136:21-137:20,145:1-5 (product ratings and customer reviews); 96:7-12, 107:21-108:20 (size); 149:14-150:1 (controls); 96:12-97:12, 128:10-16, 130:24-131:12, 131:21-132:14 (prior experience with the product); 127:8-18 (looks); 174:20-175:9 (recommendation).



In 2006, Logitech introduced the X140 stereo speaker system (shown at left). Depallens Decl. at ¶ 16. The X140 was a 2.0 (two satellites, no subwoofer) multimedia speaker system with two cones per satellite. The speaker set was small in size, specifically designed to fit on a desk already cluttered with a personal computer, monitor, printer, etc. *Id*. It was also designed to be inexpensive, with a suggested retail price of less than $30. To provide a broader range of sound and bass tones at that price and in such a compact size, the X140 was designed using passive radiator technology – one of its two speaker cones was passive, what Logitech referred to as a "pressure driver." *Id*. at ¶¶ 10, 16, 21.

3

1    In 2013, Logitech decided to redesign the X140 (and other products in its speaker line-

2    up). *Id*. at ¶ 17. The relaunched and redesigned

3    X140 was named the Z200. Like the X140, the

4    Z200 is a multimedia stereo speaker system

5    designed to provide rich stereo

6    sound in a compact size and at a low price. *Id*. at

7    ¶¶, 10 17-19. Like its predecessor, the Z200

8    (shown at right) is a 2.0 system, with two speaker

9    cones per satellite. *Id*. Also similar to the X140,

10   the Z200 incorporates passive radiator

11   technology, with one of the cones being a passive



12   radiator, what (until recently[1]) Logitech referred to as a driver or a passive driver. *Id*. at ¶ 21.

13   ### B.    The History and Purpose Of The Passive Driver

14   Historically, Logitech has interchangeably referred to passive radiator technology as a

15   passive driver, pressure driver, passive radiator or driver.[2] Depallens Decl. at ¶ 21. Regardless of

16   the shorthand used to refer to the technology, the passive radiator technology in the Z200 serves

17   a long-recognized and important function.[3] It enables a smaller and more cost effective speaker

18   system to produce quality sound similar to a larger more expensive speaker system, including

19   bass notes that would otherwise be missing in a small system.[4] Depallens Decl. at ¶¶ 10-12.

20   ---

[1] Consistent with representations made to the Court early in this action (*see* ECF 23 at 6:21-23;

21   ECF 24 at 2:5-7; ECF 30 at 6:3-10,10:19-11:1), and though Logitech disclaims any wrongdoing or consumer deception, once informed of plaintiff's confusion Logitech quickly began taking

22   steps to change the ad copy for the Z200 to more clearly identify the use of passive radiator technology. *See, e.g.*, Borders Decl. at Ex. 12 (ad copy for the Z200 currently on newegg.com).

23   [2] And it's not just Logitech that refers to passive radiators as drivers. For example, in a 2005 review of Logitech's Z4 speaker, the passive radiators are referred to by the reviewer as

24   "drivers." Borders Decl. at Ex. 9 (CNET review of Logitech Z4). And the product specifications for Amazon's Amazon Basics speakers refers to its passive radiators as drivers. *Id*. at ¶ 8-10.

25

[3] *See* Compl. ¶ 35; Porath Tr. at 39:11-17, 56:22-57:1, 75:6-18; *see also generally*

26   http://www.centerpointaudio.com/passiveradiators.aspx and
     https://en.wikipedia.org/wiki/Passive_radiator_(speaker) (picturing a Logitech speaker).

27   [4] An alternative method of supplying lower bass notes is through use of a reflex port, which is

28   essentially a hole in the speaker without a cone. In the Z200, a passive radiator is preferable to a

<span style="float:right">(cont'd)</span>

4

A passive radiator consists of a cone, suspension, and frame. *Id.* It uses air pressure fluctuations inside a speaker enclosure to create sound waves. *Id.*; *see also* n.3, *supra*. Air fluctuations (such as those created by an active driver) cause the cone of the passive radiator to move. Depallens Decl. at ¶¶ 10-12; *see also* n.3, *supra*. The mass and stiffness of the passive radiator allow the cone to resonate when the driver moves air at a certain frequency or pitch. *Id.* This tuned frequency is chosen just below the range where the driver can effectively create sound, thus extending the range of the speaker to create lower notes. *Id.* A passive radiator creates this additional sound without the need for added energy to the system. *Id.* A passive radiator can serve, as it does in the Z200, to extend the bass region of a speaker to play lower notes. *Id.* Passive radiators have been used in speakers for decades. In fact, Logitech has used passive radiator technology in its products since at least 2005, including in Logitech's Z4, and more recently, in the Z207. *Id.* at ¶¶ 22-23.

Contrary to the implication of plaintiff's assertions (*see* Porath Tr. 57:9-59:5 (plaintiff believes twice the active drivers provide twice the audio and that simply *must* be better)), adding more active drivers to a speaker is not necessarily desirable. While it is true that two identical active drivers could deliver 6 dB more SPL than a single driver, doubling up drivers will not provide bass extension, nor will it necessarily provide better sound quality. *Id.* at ¶ 13. Two drivers might make the speaker louder, but better sound would come from enhanced bass, which can be provided via a passive radiator. *Id.* There is little doubt that the lower notes that the passive radiator creates are more important to the overall listening experience than the ability to simply broadcast the same tones louder. A speaker that can go very loud, but without enough bass support, can be fatiguing, or even irritating, to listen to. *Id.* at ¶ 14. Thus, having one active driver and one passive radiator per satellite, rather than two active drivers, can provide for a more balanced, and enjoyable, listening experience. *Id.* In fact, after learning the nature and purpose of the passive radiator, plaintiff agrees that it adds value to the Z200 (Porath Tr. at

reflex port because of its small size (not enough room to make an effective port) and because a reflex port allows debris, dust, and water to be introduced into the speaker. Depallens Decl. at ¶ 15. As plaintiff recognizes, his motion (at 2:24) incorrectly refers to the passive radiator in the Z200 as a port. Porath Tr. at 59:6-60:25, 61:14-62:14.

54:21-55:11, 56:15-20, 56:22-57:3) and knowing what he now knows about the Z200 having passive radiators, he can't say he would not have purchased it and he possibly might still have (*id*. at 46:11-47:11; 47:25-48:3).

## C.   The Challenged "Two Drivers" Language

Plaintiff claims that advertising for the Z200 that it has "drivers" is false.[5] But, as an initial matter, plaintiff's motion fails to establish that consumers were uniformly or universally exposed to the challenged "drivers" language. Significantly, the bulk of the "evidence" relied on by plaintiff consists of Logitech's *internal* documents. Plaintiff fails to demonstrate how or when these alleged "literally false" statements were communicated to substantial numbers of consumers. The best plaintiff can do is to reference two third-party retailer websites (Newegg.com and Office Depot/Office Max) that include the language:

- "Rich stereo sound: Two 2.5" drivers per speaker pump out 10 Watts peak power for clear stereo sound with added deep base." *See* Declaration of Rafey Balabanian at Ex. D (Newegg.com website image) ("Balabanian Decl.") at p. 3;

- "With 10 watts of peak power and two drivers per satellite, these modern-looking multimedia speakers pump out enough volume to fill any room with rich, balanced stereo sound plus added deep bass." *Id*. (Office Depot/Office Max website image) at p. 4; and

- "Two 2.5 inch drivers per speaker deliver rich, balanced stereo sound" *Id*. (Office Depot/Office Max website image) at p. 6.

Not only is there no record that these statements were communicated broadly to consumers, but, again, none represents the passive radiators as *active* drivers.[6]

Plaintiff's motion is also conveniently silent with respect to the express statements on the actual Z200 packaging, though even plaintiff admits the box provides important product

---

[5] Plaintiff alleges that referring to passive radiators by the shorthand term "driver" is literally false because the speaker cone is not "active." Plaintiff does not contend (nor could he) that Logitech *ever* refers to a passive radiator as an *active* driver and provides no basis why a consumer would assume that. Plaintiff's theory is not reasonable for the additional reason that it would be highly irregular for speakers like the Z200 to have two identical active drivers in one enclosure. Depallens Decl. at ¶ 25. Logitech is unaware of any comparable products that have two identical "active" drivers per satellite. *Id*.

[6] In his motion, plaintiff includes several images. *See* Mot. 1-3 (Figures 1-4). There is no indication that any are attached to plaintiff's motion papers or are supported by evidentiary foundation, and there is no record that any of these figures is or was consumer facing, was seen and relied on by plaintiff or was seen and relied on by any consumer.

information that can be material to a purchasing decision. Porath Tr. at 90:20-91:3. Two different versions of the packaging for the Z200 have been in-market during the class period. Depallens Decl. at ¶ 30. Neither the 2013 initial nor the 2015 revised packaging contains the challenged ad copy quoted on the prior page that plaintiff saw and on which this lawsuit is based.

Rather, the language on packages, both of which are pictured below, *expressly states* that half the drivers on the Z200 are ***passive***. *Id*. at ¶¶ 31-32. What's more, Porath admits that it's *this* language – *disclosing passive radiator technology* – that's Logitech's "uniform marketing message." Porath Tr. 153:6-24; *see also* Compl. ¶ 24 & Figure 8.



**Fig. A. Initial Box (2013-15)**. The circled language states: (i) on side panel: "2 2.5" drivers (1 active, *1 passive*)" and (ii) on back panel: "2-driver system delivers room-filling sound." Depallens Decl. at ¶ 31, Exs. 3-4 (emphasis added).



**Fig. B. Revised Box (2015-2019)**. The circled language on back panel states "5 Watts RMS/10 Watts Peak power delivers room-filling sound from the four-driver (two active, ***two passive***) design. Enjoy clear stereo sound with enhanced bass." *Id*. at ¶ 32, Ex. 5 (emphasis added).[7]

---

[7] What is more, the statements on the box about the number of drivers appear in relatively small font only on the side or the back of the box. Depallens Decl. at Exs. 3-5; *see also* Porath Tr. at 170:9-11, 172:15-173:3 (no driver statements on front of box). Accordingly, and setting aside that the box *accurately discloses* passive radiator technology, there is no reason to assume that

(cont'd)

### D.    Evidentiary Objections

In support of his motion, plaintiff relies predominantly on the declaration of his attorney, Rafey Balabanian, and exhibits attached thereto. ECF 57-1, 57.4-57.13. But, as set forth below, the exhibits (and plaintiff's counsel's interpretation of those documents) are inadmissible and, therefore, insufficient to meet plaintiff's evidentiary burden at class certification.

| Plaintiff's Proffered Evidence | Objections |
|---|---|
| **Declaration of Rafey S. Balabanian (ECF Nos. 57-1, 57.4-57.13)** ||
| Paragraph 4, Ex. A | Lacks foundation; Fed. R. Evid. 802 (hearsay), 602 (lacks personal knowledge). |
| Paragraph 5, Ex. B | Lacks foundation; Fed. R. Evid. 802 (hearsay), 602 (lacks personal knowledge). |
| Paragraph 6, Ex. C | Lacks foundation; Fed. R. Evid. 802 (hearsay), 602 (lacks personal knowledge). |
| Paragraph 7, Ex. D | Lacks foundation; Fed. R. Evid. 802 (hearsay), 602 (lacks personal knowledge). |
| Paragraph 8, Ex. E | Fed. R. Evid. 802 (hearsay), 602 (lacks personal knowledge); lacks foundation. |
| Paragraph 9, Ex. F | Fed. R. Evid. 802 (hearsay); 602 (lacks personal knowledge), lacks foundation; assumes facts not in evidence. |
| Paragraph 11, Ex. H | Fed. R. Evid. 802 (hearsay); 602 (lacks personal knowledge), lacks foundation; assumes facts not in evidence. |

## III.   PLAINTIFF'S MOTION FOR CLASS CERTIFICATION SHOULD BE DENIED

### A.    Legal Standard For Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted). Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). A class

---

consumers even saw, let alone found material to their purchasing decision, the statements about the number of drivers, and plaintiff certainly does not present any evidence of that. In any event, plaintiff acknowledged that the disclosure of passive radiators, which appeared on ***every single box*** during the entirety of the class period, "clearly" provides consumers with notice of the passive radiators. Porath Tr. at 173:16-19; *see also id*. at 48:22-24, 49:17-19, 153:23-154:9, 155:3-156:2; 171:8-172:3, 173:20-174:10.  Plaintiff also agreed that consumers should review all sides of the box if they want to understand the product they are purchasing. *Id*. at 70:3-6, 71:10-24, 72:3-12, 90:20-91:3, 155:3-156:14.

1  can only be certified if the Court, after a "rigorous analysis," determines that Rule 23 is

2  satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). This analysis often "will

3  entail some overlap with the merits of the [] underlying claim," and a decision on class

4  certification "generally involves considerations that are enmeshed in the factual and legal issues

5  comprising the plaintiff's cause of action." *Id.* Plaintiff bears the burden to demonstrate

6  compliance with the Fed. R. Civ. P. 23 requirements. *Shanks v. Jarrow Formulas, Inc.*, 2019 WL

7  4398506, at *3 (C.D. Cal. Aug. 27, 2019).

8        **B.**      <u>**Certification Is Inappropriate Because Common Factual And Legal Issues**</u>

9                  <u>**Do Not Predominate**</u>

10        To certify a class, plaintiff must show that the requirements of commonality and

11  predominance are met. Commonality requires that there be questions of law or fact common to

12  the class. Fed. R. Civ. P. 23(a)(2). As to this, "[w]hat matters . . . is not the raising

13  of common questions . . . but rather, the capacity of a class-wide proceeding to

14  generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350

15  (citation omitted; emphasis added). Predominance, in turn, requires plaintiff to show that "the

16  questions of law or fact common to class members predominate over any questions affecting

17  only individual members." Fed. R. Civ. P. 23(b)(3). The predominance test is "far more

18  demanding" than the commonality requirement, and asks "whether proposed classes are

19  sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v.*

20  *Windsor*, 521 U.S. 591, 623 (1997). Here, common factual and legal issues do not predominate,

21  making class certification inappropriate.

22        **1.**      **Class Members Were Not Uniformly Exposed To The Alleged**

23                **Deceptive Advertising**

24        There is no uniformity regarding the purchasing experience of class members. The

25  proposed class includes consumers who purchased the Z200 from brick-and-mortar retailers like

26  Best Buy, Staples, or Office Depot, and online from retailers like Amazon, Bestbuy.com, and

27  Staples.com.[8] Depallens Decl. at ¶ 26. Not only were consumers who purchased in-store exposed

28  [8] The top-selling retailers of the Z200 are Amazon, Best Buy, Office Depot/Office Max, Staples, <sub>(cont'd)</sub>

to different representations about the passive radiator feature of the Z200 than online purchasers (*see* pages 6-7, *supra*) – but amongst online purchasers, consumers were exposed to a variety of differing statements (or no statement at all) about drivers and the Z200. Porath Tr. at 86:24-87:5, 89:6-90:13, 105:15-107:19, 111:22-112:18, 113:13-21, 137:21-138:6, 140:15-20, 151:15-152:3, 152:3-153:5. Common issues do not predominate where, as here, there is "no cohesion among the [class] members because they were exposed to quite disparate information from various representatives of the defendant." *Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1020 (9th Cir. 2011). "[A] class action cannot proceed for a fraudulent business practice under the UCL when it cannot be established that the defendant engaged in uniform conduct likely to mislead the entire class." *Davis-Miller v. Auto. Club of S. Cal.,* 201 Cal. App. 4th 106, 121 (2011); *Archie v. Pop Warner Little Scholars, Inc.*, 2019 WL 4439493 (C.D. Cal. Sept. 11, 2019).



During the class period, almost half of all purchases of the Z200 were made in-store (an example of the Z200 in a retail store is shown at left), and slightly more than half were made online. *Id.* at ¶ 27. The primary representations about the features of the Z200 that an in-store customer would see are on the product packaging. Depallens Decl. at ¶ 29. Neither version of the product packaging contains the challenged "two drivers per satellite" statement that plaintiff saw. Instead, the packaging expressly informs consumers that the Z200 features passive drivers. *See* page 7, *supra*. Not only that, but the in-store advertising was different than what plaintiff allegedly saw online and is now complaining about. *See* Porath Tr. at 86:24-87:5.

Consumers who purchased the Z200 online also had varied purchasing experiences. Not

CDW, Dell Computer, Newegg, Micro Center, and Fry's Home Electronics. Depallens Decl. at ¶ 26. Z200 units sold through these top retailers comprised 88.5% of total Z200 units sold. *Id.* Sales through any other individual retailer account for less than 1% of total Z200 units sold. *Id.*

all online retailers displayed the same advertising language, and statements that consumers are exposed to vary widely. Some websites did not include a statement about the number of drivers in the product attributes. Borders Decl. at Ex. 13. And even on websites where the challenged statement appeared, in many instances it was accessible to consumers only if they (i) clicked on a tab to reveal further detailed information from the manufacturer, or (ii) scrolled down the screen past the "Add To Cart" or similarly phrased checkout button. *Id*. at ¶¶ 3-4; Porath Tr. at 105:15-107:19, 112:5-112:18, 113:13-21. For instance, on the Office Depot/Office Max website relied on by plaintiff, the challenged statement is only shown if a consumer clicks on the "product details" tab and scrolls down the page to the "From the Manufacturer" section and reviews the section called "Features."[9] *See* Balabanian Decl. at Ex. D, p. 4.

In sum, the experience of consumers with respect to the alleged false advertising varied greatly depending on the specific way they purchased the Z200 (in-store v. online, website to website, ordering from a large desktop screen or a mobile device screen). Even plaintiff admits that he has no idea if he saw most of the graphics containing the alleged false advertising identified in the complaint. *See, e.g.*, Porath Tr. at 136:2-10, 139:7-18, 140:2-14. Plaintiff's motion neither accounts for nor reconciles ***any*** of this. Accordingly, because there is simply no record that all or a substantial percentage of class members were exposed to the alleged false advertising and because the record is exactly the opposite – there was no uniform statement seen by a substantial number of consumers that the Z200 contained drivers without clarifying language that some of the drivers were passive – common issues do not predominate.[10] *See*

[9] The Office Depot/Office Max example is not unique and many consumers would have had to search past the basic information and check-out function in order to view a "drivers" statement. For example, on CDW's website, a consumer currently has to scroll down past any checkout button to see any statements relating to "four drivers" or "two drivers per speaker." Borders Decl. at ¶¶ 3-4. Similarly, when using a phone to purchase the Z200 on Amazon, consumers also had to scroll down past any checkout button to see any language referencing two drivers. *Id.* at ¶¶ 5-7; *see also* Porath Tr. at 91:9-93:18 (consumers have a different experience with ad copy depending on whether purchasing from a full size monitor, a laptop, or a mobile device).

[10] Plaintiff's failure to show common exposure to the challenged statements also precludes a showing of common materiality. *See In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1111 (C.D. Cal. 2015) ("Because they have not demonstrated that NJOY's advertising was sufficiently pervasive to warrant a presumption that all members of the class saw [the allegedly misleading] advertisements," plaintiffs "have not shown that materiality can be

<span style="float:right">(cont'd)</span>

1   *Darisse v. Nest Labs, Inc.*, 2016 WL 4385849, at *5 (N.D. Cal. Aug. 15, 2016) (no classwide

2   exposure where packaging did not make challenged claims and it was unclear that all advertising

3   made the same alleged misrepresentation).[11]

4              **2.      Plaintiff Has No Classwide Evidence Of Materiality Or Deception**

5              To certify a class under California consumer protection law, plaintiff "must show that the

6   challenged statements are [(1)] material and [(2)] likely to mislead or deceive consumers on a

7   classwide basis." *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1043 (C.D. Cal.

8   2018).  Failure to present classwide evidence that the challenged labeling or advertising

9   statement was material to consumers is sufficient to deny class certification. *Id.*; *Kosta v. Del*

10  *Monte Foods, Inc.*, 308 F.R.D. 217, 224-25 (N.D. Cal. 2015). That is because if the

11  misrepresentation is not material on a classwide basis, reliance would vary from consumer to

12  consumer making the class unsuitable for certification. *In re Tropicana Orange Juice Mktg. &*

13  *Sales Practices Litig.*, 2019 WL 2521958, at *7-8, 13 (D.N.J. June 18, 2019) (finding no

14  predominance and denying class certification on UCL and CLRA claims where plaintiff failed to

15  demonstrate materiality). Plaintiff makes the required showing of materiality "by establishing

16  (with, for example, market research) that the statements would be material to a reasonable

17  member of the purchaser class." *Allen v. Conagra Foods, Inc.*, 2019 WL 3302821, at *8 (N.D.

18  Cal. July 22, 2019); *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2017 WL 2559615, at

19  *8 (C.D. Cal. June 7, 2017) ("Absent a consumer survey or other market research to indicate

20  how consumers reacted to the [challenged] statements, and how they valued those statements

21  compared to other attributes of the product and the [relevant] market generally, Plaintiffs have

22  not offered sufficient evidence of materiality across the class."); *Shanks*, 2019 WL 4398506, at

23  *4 (same).

24  ───────────────────
    prove[n] on a classwide basis.").

25
    [11] Plaintiff's reliance on *In re First All. Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006) is

26  misplaced because it shows exactly what is missing here: that "a standardized sales pitch [was]
    employed." *See also Risinger v. SOC LLC*, 708 F. App'x 304, 306 (9th Cir. 2017) (nearly

27  identical representations of work schedules were made in class action concerning armed guards
    who worked in Iraq).

28

                                          12

1    Despite this overwhelming body of case law, plaintiff's motion is *completely silent* on the

2    issues of deception and materiality. Plaintiff presents no expert testimony or consumer survey, or

3    any research or evidence whatsoever to support a finding that (i) the statement "2 drivers per

4    satellite" deceived consumers because they interpreted it as referring to two *active* drivers, or (ii)

5    whatever they thought the statement meant, that it was material to their purchasing decision.

6    Plaintiff presents no evidence that the statement "2 drivers per satellite" deceived

7    consumers. While plaintiff himself contends that he was duped, there is no evidence by which

8    the Court can conclude that a substantial number of consumers were deceived because they

9    understood "driver" to refer only to a powered, active driver and that they thought the Z200 had

10   no passive radiators. *In re 5-Hour Energy*, 2017 WL 2559615, at *9 (plaintiff must provide

11   evidence of what the reasonable consumer thinks, not what plaintiff thinks). What is more, the

12   context in which the statement appears matters. *See Wysong Corp. v. APN, Inc.*, 889 F.3d 267,

13   272 (6th Cir. 2018) (in false advertising case, context is crucial). Plaintiff has not accounted for

14   circumstances where the statement *appears along* with a clear explanation that the Z200 contains

15   passive drivers. Even plaintiff admits that the word "passive" could provide significant context to

16   consumers (Porath Tr. at 155:3-156:2; 171:8-172:3, 173:20-174:10), and could lead a customer

17   who was interested and didn't know to ask questions about what passive meant in relation to a

18   driver (*id*. at 155:3-156:2). On this record, plaintiff has presented *no* evidence that a reasonable

19   consumer was deceived in the manner alleged in the complaint.

20   Likewise, plaintiff came forward with zero evidence of materiality. Plaintiff's *entire*

21   showing on materiality appears to be contained in a single, conclusory sentence of advocacy

22   from his attorneys: "Given that Logitech designed the Z200 to look like a two-driver speaker,

23   and advertised it as such, it is reasonable to infer that all or nearly all consumers relied on that

24   representation." Mot. at 14:14-16. Plaintiff's testimony, however, confirms that numerous

25   factors, having *nothing* to do with the number of drivers or whether a driver was passive or

26   active, impacted his – and, likely, other consumers' – purchasing decision.[12]

---

[12] Plaintiff testified at deposition that the factors influencing his and others' decision to purchase
the Z200 included: (i) *price* (33:4-14, 33:21-34:9, 34:11-17, 35:12-13, 35:20-22; 36:1-3, 80:25-
81:3 (price important; he was on a budget at the time of purchase); 96:12-13 (on a budget,

<span style="float:right">(cont'd)</span>

1    Relying on two New York cases applying New York and New Jersey law, plaintiff

2  contends that he does not have to show materiality because reliance can be presumed if the

3  representation made to consumers was uniform. Mot. at 13-14. But that is not the law in

4  California. *See Kosta*, 308 F.R.D. at 224-25.[13]

5    Plaintiff also places heavy reliance on *Dickey v. Advanced Micro Devices, Inc.*, 2019 WL

6  251488 (N.D. Cal. Jan. 17, 2019), as if just because his attorneys were able to obtain class

7  certification in that case with no expert witnesses, no survey or consumer research, and no

8  evidence of deception, materiality, or damages, that plaintiff is entitled to the same result here

9  based solely on the arguments of counsel. But *Dickey* presented an entirely different record – a

10  record of "a ***single*** message . . . across ***all*** of the relevant advertising," including the defendant's

11  website, third party websites, other advertising and, significantly, the on-package labeling. *Id*. at

12  *5 (emphasis added); *see also id.* at *1. As the *Dickey* court recognized, defendant did "not

13  dispute that ***all*** class members were exposed to ***the same*** allegedly misleading message." *Id*. at

14  *5 (emphasis added). Instead, defendant argued that consumers may have different

15  understandings of the single advertising. *Id*. Defendant "repurposed" that same argument against

16  *all* of Fed. R. Civ. P. 23(b)(3) requirements. *Id*. at *6. On *this* record, the *Dickey* court ruled on

17  the very narrow issue before it, concluding that "*[b]ecause* Plaintiffs have demonstrated

18  common exposure" to the same single, universal questionable advertising "the Court finds that

19

20  bought low end stuff), 101:25-102:1, 113:7-12 (plaintiff got a "smoking hot deal"); 125:24-25 ("the price is the big factor here"); (ii) ***product ratings and customer reviews*** (35:4-6, 35:11-12,

21  35:23-25; 36:1-3, 98:12-18, 136:21-137:20, 145:1-5, 175:12-176:9, 176:11-24); (iii) ***compact size*** (96:7-12, 107:21-109:1); (iv) ***integrated power and volume controls on the front for quick***

22  ***and convenient adjustment*** (149:14-23, 149:14-150:1); (v) ***appearance*** (127:8-18, 151:11-12); (vi) ***recommendation*** (174:20-175:9); and (vii) ***experience with Logitech and its reputation***

23  (96:12-97:24, 98:5-10, 128:7-16; 131:25-132:14).

24  [13] *See also Caro v. Proctor & Gamble Co*., 18 Cal. App. 4th 644, 668 (1993) (affirming denial of certification where individual issues of materiality predominated); *Pierce-Nunes v. Toshiba Am.*

25  *Info. Sys., Inc.*, 2016 WL 5920345, at *6 (C.D. Cal. June 23, 2016) ("If the misrepresentation or omission is not material as to all class members, the issue of reliance would vary from consumer

26  to consumer and the class should not be certified.") (citation omitted); *Lucas v. Breg, Inc.*, 212 F. Supp. 3d 950, 968-69 (S.D. Cal. 2016) (same); *In re 5-Hour Energy*, 2017 WL 2559615, at *6-

27  *8 ("Courts have refused to certify a consumer protection class where plaintiffs make . . . a limited showing of class-wide materiality").

28

14

common questions of law predominate." *Id*. at \*7. Significantly, the *Dickey* court acknowledged the legal principle that where there is a record of putative class members being exposed to different advertising, as is the record here, "materiality . . . cannot be measured on a class-wide basis." *Id*. at \*5. The *Dickey* court distinguished, though certainly did not disagree with or in any way undermine, a long line of cases standing for that legal principle. *Id*. To the extent plaintiff relies on *Dickey* to argue that (i) plaintiff is not required to come forward with classwide evidence of materiality in order to show entitlement to class certification, or (ii) the Court need not apply a vigorous analysis to ensure the requirements of Rule 23 are met, plaintiff is in error. *Dickey* stands for no such thing, nor could it. *See* pages, 10, 12, and nn.10 & 13, *supra*, and cases collected there.

Because plaintiff has failed to come forward with classwide evidence of deception and materiality, class certification should be denied.

### 3.  Plaintiff Cannot Calculate Damages On A Classwide Basis

Plaintiff also fails to show predominance because his damage model fails to provide a reliable method of calculating damages on a classwide basis – an independent ground upon which to deny class certification. *Comcast*, 569 U.S. 27 at 34 (plaintiffs must demonstrate that "damages are capable of measurement on a classwide basis"). Plaintiff was required to present a reliable damage model that is consistent with, and measures only those damages attributable to, his theory of liability. *Id.* at 35; *In re Tropicana Orange Juice*, 2019 WL 2521958, at \*13. Plaintiff's damage theory, that each consumer was damaged in the amount of $8, wholly fails to meet this requirement.

Plaintiff's damage model is based solely on the argument of plaintiff's counsel that (i) Logitech's Z150 speakers are comparable to what plaintiff actually received, and (ii) the wholesale price of the Z200 is $8 more than the Z150 and, therefore, that difference is the damage amount per purchase. Mot. at 15-16. This damage calculation fails in every way possible. There is no evidence that consumers suffered any injury at all, much less that the Z150 and Z200 are comparable products or that consumers overpaid for the Z200 by the $8 difference in wholesale prices between the Z150 and the Z200.

LOGITECH INC.'S OPPOSITION TO CLASS CERTIFICATION;
CASE NO. 3:18-CV-03091-WHA

1

### a. The Damage Calculation Is Disconnected From Plaintiff's

2

### Theory Of Liability

3   Under *Comcast*, plaintiff is required to show that his damage theory is connected to his

4   theory of liability and that it measures damages attributable only to the difference between what

5   plaintiff contends consumers expected to receive (a speaker system with all active drivers) and

6   what they received (a speaker system with both active and passive drivers). But this damage

7   theory is based on the now-admitted false premise that the passive drivers on the Z200 are

8   worthless and that there is no difference in sound quality or performance between the Z200

9   (which has a passive driver) and Logitech's less expensive Z150 (that doesn't). Mot. at 2; 15-16.

10  As plaintiff now readily acknowledges the passive driver on the Z200 is not a "dummy" – it

11  "resonates at a set frequency," "enhance[s] the bass effect" of the Z200, and "can modify the

12  sound produced by a speaker." Mot. at 2:25, 3:2-9, 5:17-18; Porath Tr. at 54:21-55:11, 56:15-20,

13  56:22-57:3; *see also* Depallens Decl. at ¶¶ 20, 36-37. But, plaintiff has not tweaked his damage

14  theory to reflect what he now knows to be the case regarding the value of a passive radiator. For

15  this reason, plaintiff's damage theory is not connected to any alleged inappropriate premium

16  charged by Logitech based on the alleged false advertising.[14]

17

### b. Plaintiff's Damage Calculation Is Not Reliable

18  Even assuming plaintiff's "comparable product" theory was viable (a rather generous

19  assumption), his method of calculating the alleged price premium between these alleged

20  comparable products is unreliable.

21  *First,* plaintiff fails entirely to demonstrate that the Z200 and the Z150 are actually

22  "comparable" products, nor could he. As illustrated on the next page, they are not.[15]

23

24  [14] And, of course, plaintiff has no legal right to seek some generalized non-restitutionary
    disgorgement of Z200 revenue or profits. *Korea Supply Co. v. Lockheed Martin Corp.*, 29

25  Cal.4th 1134, 1146, 1148 (2003).

26  [15] The true competitors of the Z200 are the Amazon Basics speakers, the Sony SRS A3 5 w, the
    Hercules XPS 2.0 40 slim, 10 watts, and the Trust Tytan 2.0 18w RMS; all of which have

27  approximately the same retail price as the Z200 and ***none*** of which has two active drivers per
    satellite. Depallens Decl. at ¶¶ 25, 38.

28

Which Logitech
Multimedia Speakers
are right for you?
**Find even more at logitech.com**




| | MONO 1.0 SPEAKER | 2.0 STEREO SPEAKERS | |
|---|---|---|---|
| | **MULTIMEDIA SPEAKER Z50** | **MULTIMEDIA SPEAKER Z150** | **MULTIMEDIA SPEAKER Z200** |
| | **GOOD** | **BETTER** | **BEST** |
| **What Do You Get?** | Amplify your sound | Small size, clear sound | Rich stereo sound with deep bass |
| **AUDIO FEATURES** | | | |
| Peak power | 10 watts | 6 watts | 10 watts |
| # of drivers per speaker | 1 x 2.25" driver | 1 x 2" drivers | 2 x 2.5" drivers (1 active, 1 passive per satellite) |
| Inputs for computer, music, movie and game devices | 1 | 2 | 2 |
| Headphone Jack | | ● | ● |
| **CONTROLS** | | | |
| Type | On-device | On-speaker | On-speaker |
| Functions controlled | | Volume, power | Volume, power, tone |
| **SYSTEM SUPPORT** | | | |
| Windows® XP, 7, Vista, 8 | ● | ● | ● |
| Mac® OS X | ● | ● | ● |
| Tablets, Smartphones, MP3 players | ● | ● | ● |

Among the substantial differences between the Z200 as compared to the Z150 are (i) a larger driver (2½" v. 2" driver), (ii) 10 watts v. 6 watts, (iii) a passive driver, and (iv) tone control. Depallens Decl. at ¶ 36; *see also* Compl. ¶ 40. The Z200 also offers a current, modern design that is less bulky than the Z150. *Id.* The Z200 also outperforms the Z150 in acoustic testing. *Id.* at ¶ 37. Logitech sells the Z200 for a higher price because it has numerous attributes, features and functionalities that the Z150 simply does not have. *Id.* at ¶¶ 36-37

As further support for his "comparable products" analysis, plaintiff points to what he contends are other speakers *with two active drivers per satellite* that sell for the same or comparable price as the Z200. *See* Mot. at 5:11-12; Porath Tr. at 24:12-26:12; 37:17-38:14, 47:19-22, 48:13-14. But plaintiff is simply mistaken. The speakers identified by plaintiff – the Amazon Basics AC Powered Multimedia Speaker and the Logitech Z207 (the Bluetooth version of the Z200) – *do not have two active drivers per speaker.* In fact, both of them are identical to the Z200 in that they contain two identical cones consisting of one active driver and one passive driver. Borders Decl. at ¶ 10; Depallens Decl. at ¶ 22. On this record, plaintiff has not identified *any* products that present the characteristics of the product he thought he was buying back in

17

1    2016 (2.0 with four active drivers), and the products he has identified provide very similar driver

2    attributes, including passive drivers, and they cost just about the same amount of money.

3         *Second*, plaintiff offers no evidence (other than the say-so of his attorneys) to support his

4    calculation that class members overpaid for the Z200 by exactly the $8 different in wholesale

5    prices between the Z200 and Z150. Plaintiff does not even say what the average wholesale price

6    for each product is. There is no evidence as to how the $8 differential was calculated – plaintiff

7    refers only to an eight-page spreadsheet with a multitude of entries and information. Balabanian

8    Decl. at Ex. H. On its face, this "evidence" (even if it were admissible) does not establish an

9    average wholesale price differential of $8. Moreover, the difference in **wholesale, not retail**,

10   prices is not a reliable method of calculating damages to consumers, who paid retail prices.

11   Compounding this error, plaintiff offers no explanation as to how his damage model accounts for

12   the wide variation in the purchase price paid by consumers. For example, plaintiff paid $17.99

13   for a refurbished Z200, which is substantially less than the retail prices for both the Z200 *and* the

14   Z150. Depallens Decl. at ¶¶ 19; 35; Porath Tr. at 163:2-16; Balabanian Decl. at Ex. E. But the

15   damage model does not account for how plaintiff's price premium (if any) will be calculated.

16   Merely proposing a method of calculating damages without showing that the calculations will

17   work and what variables will be used is insufficient at the class certification stage. *In re ConAgra

18   Foods, Inc.*, 302 F.R.D. 537, 552–53 (C.D. Cal. 2014); *Bruton v. Gerber Prods. Co.*, 2018 WL

19   1009257, at *12 (N.D. Cal. Feb. 13, 2018) (damages model insufficient where there was no

20   meaningful explanation as to how the variables will be addressed); *Jones v. ConAgra Foods,

21   Inc.*, 2014 WL 2702726, at *20 (N.D. Cal. June 13, 2014) (concluding that plaintiffs failed to

22   describe an adequate damage model where plaintiff's expert did not provide "a clearly defined

23   list of variables" and had not determined comparator products or whether needed data existed).

24        **C.**    **Plaintiff's Claims Are Not Typical Of The Class**

25        In addition to his burden of showing predominance, plaintiff also must establish that his

26   claims are typical of the putative class. Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is

27   whether other members have the same or similar injury . . . and whether other class members

28   have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497,

                                                18

508 (9th Cir. 1992) (citation omitted). Plaintiff is not typical because he lacks standing under the UCL, FAL, and CLRA and there are unique factual and legal defenses to his claims regarding his exposure to the challenged advertising and his potential damages.

### 1.     Plaintiff Lacks Standing Under The UCL, FAL, And CLRA

Plaintiff lacks standing under the UCL, FAL, and CLRA because he cannot demonstrate that he "lost money or property" as a result of the alleged false advertising. *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 322 (2011); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013), as amended on denial of reh'g and reh'g en banc (2013).[16] "The plain import of [the lost money or property element] is that a plaintiff now must demonstrate some form of economic injury." *Kwikset*, 51 Cal. 4th at 323. Here, Porath did not suffer an economic injury in connection with his purchase of the Z200.

To establish standing, Porath must demonstrate that "*but for*" Logitech's alleged misrepresentation, he would not have bought the Z200 speakers at the price offered. *Spacone v. Sanford, L.P.*, 2018 WL 4139057, at *2–3 (C.D. Cal. Aug. 9, 2018), appeal dismissed sub nom. *Spacone v. Sanford, LP*, 2019 WL 1150068 (9th Cir. Jan. 11, 2019). In *Spacone*, the district court concluded that because plaintiff's deposition testimony showed that he would have bought the product anyway, regardless of the deception, he suffered no economic injury. *Id*. Likewise, plaintiff's deposition testimony establishes that he suffered no economic injury in connection with his purchase of the Z200. Not only did plaintiff testify that he is *not sure* whether he would have passed on the Z200 had he known what a passive driver was, and it was possible he would have made the purchase anyway, he purchased the Z200 for a discounted price and agrees he received "full value" for his $17.99 purchase. Porath Tr. at 46:11-47:11; 47:25-48:3, 186:18-187:1, 87:16-18, 126:15-19. Accordingly, plaintiff lacks standing under the UCL, FAL, and CLRA rendering his claims unsuitable for class certification.

---

[16] Standing is a threshold issue the Court should resolve before class certification. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("[S]tanding is the threshold issue in any suit. If the individual plaintiff lacks standing, the court need never reach the class action issue.") (citation omitted); *see also Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (adopting approach that standing issue determined before consider Rule 23(a) prerequisites for class certification).

## 2.     Plaintiff's Claims Are Subject To Unique Defenses

Plaintiff's claims are also not typical of the class because they are predicated on facts that are unique to his online purchasing experience. Plaintiff purchased his Z200 on Newegg.com, where he was exposed to the challenged "two drivers" statement. Compl. ¶ 43. But this representation was not made to other consumers who purchased the product, and when it was, it often came with additional language that disclosed the passive drivers. *See* page 7, *supra*. Accordingly, "there is no 'typical' claim or experience, certainly not plaintiff's experience, that can be extrapolated classwide." *Sanchez v. Wal Mart Stores, Inc.*, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009). Even under the best of circumstances, plaintiff's experience is typical only of those consumers who purchased on Newegg.com – which comprises less than 2% of all sales of the Z200. Depallens Decl. at ¶ 27.

Plaintiff also suffered a different injury – if he did at all – than that of the rest of the proposed class. Plaintiff agrees that he received "full value" for his purchase of the Z200 (Porath Tr. at 186:18-187:1) and suffered no actual harm or loss because of the challenged advertising language because:

- For the price, the Z200 met his expectations for sound quality and the Z200 sounded great (*id*. at 87:16-18, 126:15-19);
- The Z200 met his expectation for clear stereo sound and added deep base (*id*. at 87:21-23, 147:9-12, 148:15-19); and
- He never made a complaint about the Z200 to Logitech, never had a need to make a complaint and the speakers are still working (*id*. at 132:15-20, 177:2-10).

In addition, plaintiff purchased a refurbished Z200 for $17.99 – an amount far less than what other consumers would have paid, especially if they purchased a new unit. Porath Tr. at 80:15-24, 81:4-19. Thus, assuming he suffered any damage at all, his damages will be calculated in a different manner than the rest of the class.

### D.     Plaintiff's Nationwide Class Cannot Be Certified

A nationwide class of purchasers of the Z200 is not appropriate because California consumer protection law cannot be applied nationwide. *Mazza v. Am. Honda Motor Co.*, 666

F.3d 581 (9th Cir. 2012). Under California conflict of laws analysis, nationwide classes brought under consumer protection statutes almost always require applying the laws of many states because "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction *in which the transaction took place*." *Id*. at 594 (emphasis added). Since *Mazza*, numerous courts in the Ninth Circuit have declined to certify nationwide classes for claims similar to those brought here, concluding that California law cannot be applied to claims of nonresident class members – even when they have allegedly relied on representations emanating from California by California defendants. *See Andren v. Alere, Inc.*, 2017 WL 6509550, at *19-20 (S.D. Cal. Dec. 20, 2017); *see also Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (courts routinely hold that fraud claims are difficult to maintain on a nationwide basis and rarely are certified).[17]

To determine if certification of a nationwide class under California consumer protection law should be denied, the Court applies California's choice of law analysis. *Mazza*, 666 F. 3d at 589-590. Here, the differences in state consumer protection laws, and the interests of home states in governing an advertiser's claim and impacts on consumers, preclude certification of a nationwide class.

The first step in the choice of law analysis is to determine whether there is a material difference in the consumer protection laws of California and other states. *Id.* As has been recognized in a multitude of cases, there are significant differences. *See Darisse*, 2016 WL 4385849, at *9-10 (cataloging differences with citations).

- *Statute of limitations periods*. In California, the statute of limitations for the UCL is four years (Cal. Bus. & Prof. Code § 17208), the FAL has no specific statutory statute of limitations, but it and fraud are generally governed by a limitations period of three years

---

[17] The test applied under the conflict of law analysis is: (1) "whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different"; (2) if there is a difference, whether "each jurisdiction's interest in the application of its own law" creates a "true conflict"; and (3) if there is a true conflict, whether a foreign state's "interest would be more impaired if its policy were subordinated to the policy of the [forum] state." *Mazza*, 666 F.3d at 590 (quoting *McCann v. Foster Wheeler, LLC*, 48 Cal.4th 68, 81-82 (2010)).

(Cal. Code of Civ. Proc. § 338(a)). But many states have shorter one- and two-year statutes. Borders Decl. at Ex. 10. Accordingly, certification of the proposed class would include individuals whose claims are time-barred under their own states' laws. *See Darisse*, 2016 WL 4385849, at *9 (differing statutes of limitations were material).

- *The UCL and FAL require reliance. See* Borders Decl. at Ex. 10. Several other states, such as "Delaware, Florida, Iowa, Massachusetts, New York, and Connecticut[,] do not." *Darisse*, 2016 WL 4385849, at *10; Borders Decl. at Ex. 10.

- *Authorization of class actions*. Unlike California, some states' consumer protection laws do not authorize private class actions at all (*e.g*., Alabama, Georgia, Louisiana, Mississippi, Montana, South Carolina, Tennessee, and Virginia), while others permit class actions only when pre-approved by the state's attorney general (Iowa). *Darisse*, 2016 WL 4385849, at *9; Borders Decl. at Ex. 10.

- *State law variations with regard to common law fraud also differ materially. See Darisse*, 2016 WL 4385849, at *13-14. In some cases and under some circumstances, California permits an inference of justifiable reliance. *See Wilkins v. Nat'l Broad. Co.*, 71 Cal. App. 4th 1066, 1081 (1999); *Kaldenbach v. Mutual of Omaha Life Ins. Co*., 178 Cal. App. 4th 830 (2009). But other states, such as Delaware and Florida either do not permit an inference of reliance or require actual reliance. Borders Decl. at Ex. 10. The burden of proof for fraud claims differs. In California, the standard is preponderance of the evidence, but most other states require clear and convincing evidence. *Darisse*, 2016 WL 4385849, at *13-14; Borders Decl. at Ex. 10.

The next and final step is to determine if the foreign jurisdiction has an interest in applying its own laws and if subordinating its laws to that of California would impair that interest. *Mazza*, 666 F. 3d at 590. Foreign states have an interest in applying their own law to transactions that occur within their borders, such as consumer purchases of the Z200. *Id*. at 593. Indeed, the harm (if any) to non-California consumers occurred in their home states because that is where the alleged false advertising was communicated and where their reliance in purchasing the product took place. *Id*. at 593-94; *accord Andren*, 2017 WL 6509550, at *19. Each state's

interest in regulating conduct within its borders outweighs California's interest in regulating the transactions of Logitech in foreign states. Accordingly, the claims of non-California consumers must be governed by and decided under the law of the state in which that putative class member was exposed to the challenged statements and purchased the challenged product. Because of the vast differences in state law, common legal issues do not predominate.

### E.   Plaintiff's Common Law Fraud Claim Is Unsuitable For Class Certification

Plaintiff's common law fraud claim – even limited to the California only sub-class – is also unsuitable for class treatment because of its individualized, fact-specific nature and, in particular, the element of reliance.[18] *See* Fed. R. Civ. P. 23 1966 advisory committee's note ("[A]lthough having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed."). Here, putative class members were not uniformly exposed to the alleged false advertising – some were not exposed at all, some were exposed to the drivers language, and some were exposed to the language that clearly disclosed passive radiators. In particular, there are significant differences between the experiences of in-store and online purchasers. Accordingly, individual issues will predominate with respect to plaintiff's common law fraud claim rendering class certification inappropriate. *See Gartin*, 245 F.R.D. at 437 (finding that individual issues predominated because "Plaintiff has alleged various misrepresentations by Defendant. As a result, different class members may have relied on different representations.").[19]

---

[18] Whether reliance was justifiable will necessarily be an individualized inquiry because, as plaintiff admits, the statement on *all* of the boxes that the product contained *passive* drivers is sufficient to put consumers on notice that the speaker system did not contain only active drivers. Porath Tr. 155:3-156:2; 171:8-172:3, 173:20-174:10. So, consumers exposed to the passive language would *not* have justifiably relied in the same way as plaintiff. *See Gartin v. S & M NuTec LLC*, 245 F.R.D. 429, 438 (C.D. Cal. 2007) (whether reliance was justifiable would be individualized because media coverage of the litigation rendered the nature of justifiable reliance different as to earlier versus later purchasers.)

[19] Even if plaintiff could demonstrate that Logitech disseminated one uniform misrepresentation (he can't), he must also show that the statements are similarly material across the class. *Ono v. Head Racquet Sports USA, Inc.*, 2016 WL 6647949, at *14 (C.D. Cal. Mar. 8, 2016); *Brickman v. Fitbit, Inc.*, 2017 WL 5569827, at *7 (N.D. Cal. Nov. 20, 2017); *Badella v. Deniro Mktg. LLC*, 2011 WL 5358400, at *9 (N.D. Cal. Nov. 4, 2011).

1

2

      **F.**     **A Class Action Is Not Superior Because Plaintiff's Class Definition Is Overbroad, And Not Objective Or Administratively Feasible**

3       Even though the Ninth Circuit has found that there is no implied ascertainability

4 requirement for class certification, courts should still consider whether there are difficulties in

5 managing a class action that would make it administratively infeasible to identify proposed class

6 members as part of its superiority inquiry. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128

7 (9th Cir. 2017); *Ang v. Bimbo Bakeries USA, Inc.*, 2018 WL 4181896, at *12 (N.D. Cal. Aug. 31,

8 2018); *Schroeder v. Envoy Air, Inc.*, 2017 WL 3835804 at *3 (C.D. Cal. Aug. 30, 2017) ("[T]he

9 Ninth Circuit directed courts to consider administrative feasibility as a component of the

10 superiority inquiry, to ensure that 'defendants . . . receive a fair opportunity to present their

11 defenses when putative class members actually come forward'") (citation omitted).

12       Under this standard, plaintiff's class definition renders the putative class unmanageable.

13 Plaintiff's class definition does not allow *any* class members to self-identify because it does not

14 tell consumers what retailers or websites used the challenged phrases and when.[20] It is not

15 reasonable to expect a consumer to be able to identify – months or years later – whether the

16 website they purchased the Z200 from *contained one of eleven two-to-three word phrases on it.*[21]

17 Plaintiff needs to come up with a class definition that provides consumers with objective

18 information consumers can utilize to determine whether they are a class member, *i.e.*, all

19 purchasers, all online purchasers or all purchasers from Newegg.com. And failing to provide any

20 way at all for a class member to self-identify (or for that self-identification to be confirmed) fails

21 to protect Logitech's due process right to challenge claims filed by consumers.

[20] This is a problem of plaintiff's own making. Recognizing the potential bar to class certification posed by the differing statements consumers may have seen and the different methods of purchase consumers may have use, plaintiff recently pivoted from a class definition of "all purchasers" to only those who "purchased Logitech's Z200 stereo sound system prior to May 23, 2018, either in person or from a website page" containing *any of eleven phrases* (or derivations thereof). *Compare* Compl. at ¶ 47 with Mot. at 3.

[21] And there is no way for class members to now confirm if they were exposed to those statements at the time of purchase because the websites have been updated. Plaintiff provides no explanation as to how all of the historical webpages that contained the challenged phrases over the past several years can be identified or at what time periods these websites contained the challenged phrases.

24

1    Moreover, plaintiff's proposed class also includes consumers who purchased the Z200 in

2  brick-and-mortar stores. But, as detailed above, plaintiff does not show that in-store purchasers

3  were exposed to the alleged false advertising because the product packaging does not contain the

4  challenged drivers statement *and* contains the clear disclosure of passive drivers. "A class may

5  not be defined so broadly that it includes many members who were not harmed by a defendant's

6  allegedly unlawful conduct." *Park v. Webloyalty.com, Inc.*, 2019 WL 1227062, at \*10 (S.D. Cal.

7  Mar. 15, 2019) (citing *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1138 (9th Cir. 2016)).

8  Plaintiff's class definition is also overbroad because it includes consumers who purchased in-

9  store without viewing or relying on website advertising.

10  **IV.    CONCLUSION**

11    For the foregoing reasons, Logitech respectfully requests that plaintiff's motion for class

12  certification be denied.

13  Dated: October 17, 2019                    MAYER BROWN LLP
                                                Dale J. Giali
14                                              Keri E. Borders
                                                Rebecca B. Johns
15
                                                By: */s/ Keri E. Borders*
16                                                   Keri E. Borders
                                                Attorneys for Logitech Inc.
17

18

19

20

21

22

23

24

25

26

27

28