Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Todd Logan (SBN 305912)
tlogan@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO**

| | |
|---|---|
| JAMES PORATH, individually and on behalf of all others similarly situated, | Case No. 3:18-cv-03091-WHA |
| *Plaintiff,* | **PLAINTIFF'S REPLY IN SUPPORT OF CLASS CERTIFICATION** |
| v. | Date: November 14, 2019 |
| LOGITECH, INC., | Time: 8:00 a.m. |
| *Defendant.* | Place: Courtroom 12 - 19th Floor |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT IN REPLY ................................................................................................... 2

I.      Purchasers of the Z200 were exposed to materially uniform
misrepresentations ................................................................................................ 2

II.     Porath has made a more-than-adequate showing of materiality and
deception ............................................................................................................... 5

III.   Porath's damages theory is certifiable ................................................................. 8

IV.   Porath is typical of, and will adequately represent, the proposed Class
and Subclass ....................................................................................................... 10

V.    Porath's nationwide common law fraud Class is appropriate for
certification ......................................................................................................... 12

VI.   A class action is a superior means of adjudication ............................................ 15

CONCLUSION ................................................................................................................ 15

1

## **TABLE OF AUTHORITIES**

2

**United States Supremes Court Cases**

3

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ...................................................................................................6

4

5

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ...................................................................................................6

6

7

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ...............................................................................................8

8

**United States Appellate Court Cases**

9

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) .................................................................................15

10

11

*Cabral v. Supple LLC*,
    608 F. App'x 482 (9th Cir. 2015) ..............................................................................4

12

13

*Castano v. Am. Tobacco Co.*,
    84 F.3d 734 (5th Cir.1996) .......................................................................................13

14

15

*In re First Alliance Mortgage Co.*,
    471 F.3d 977 (9th Cir. 2006) ......................................................................................4

16

17

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) .........................................................................13, 14, 15

18

19

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ................................................................................8, 9

20

21

*Lambert v. Nutraceutical Corp.*,
    870 F.3d 1170 (9th Cir. 2017) ................................................................................8, 9

22

23

*Marsu, B.V. v. Walt Disney Co.*,
    185 F.3d 932 (9th Cir. 1999) ...................................................................................10

24

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ..............................................................................13, 14

25

26

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002) ....................................................................................2

27

28

*Pulaski & Middleman, LLC v. Google Inc.*,
  802 F.3d 979 (9th Cir. 2015) ........................................................................ 10

*Sali v. Corona Regional Med. Ctr.*,
  909 F.3d 996 (9th Cir. 2018) .......................................................................... 2

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ........................................................................ 2

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*,
  593 F.3d 802 (9th Cir. 2010) .......................................................................... 5

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) .......................................................................... 6

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ........................................................... 13, 14, 15

**United States District Court Cases**

*Allen v. Conagra Foods, Inc.*,
  331 F.R.D. 641 (N.D. Cal. 2019) .................................................................... 7

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  No. 10-cv-4387-PJH, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014) .................... 10

*Astiana v. Kashi Co.*,
  291 F.R.D. 493 (S.D. Cal. 2013) .................................................................... 9

*Brickman v. Fitbit, Inc.*,
  No. 15-cv-02077-JD, 2017 WL 5569827 (N.D. Cal. Nov. 20, 2017) ........................ 2, 7, 9

*Dickey v. Advanced Micro Devices*,
  No. 15-cv-4922-HSG, 2019 WL 251488 (N.D. Cal. Jan. 17, 2019). ................................ 7

*English v. Apple Inc.*,
  No. 14-cv-01619-WHO, 2016 WL 1188200 (N.D. Cal. Jan. 5, 2016) ............................ 2

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...................................................... 6, 7

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*,
  No. 13-ml-2438-PSG, 2017 WL 2559615 (C.D. Cal. June 7, 2017) ................................ 7

*In re Apple, AT &T iPad Unlimited Data Plan Litig.*,
    No. C-10-02553 RMW, 2012 WL 2428248 (N.D. Cal. June 26, 2012) .............................4

*Jones v. ConAgra Foods, Inc.*,
    No. 12-cv-01633-CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014)............................7

*Lane v. Wells Fargo Bank, N.A.*,
    No. 12-cv-04026-WHA, 2013 WL 3187410 (N.D. Cal. June 21, 2013) ...................13, 14

*Mullins v. Premier Nutrition Corp.*,
    No. 13-cv-01271-RS, 2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ...............................6

*Mullins v. Premier Nutrition Corp.*,
    178 F. Supp. 3d 867 (N.D. Cal. 2016)..............................................................................7

*Russell v. Kohl's Dep't Stores, Inc.*,
    No. 15-cv-1143-RGK, 2015 WL 12781206 (C.D. Cal. Oct. 6, 2015) .............................10

*Spacone v. Sanford, L.P.*,
    No. 17-cv-02419-AB-MRW, 2018 WL 4139057 (C.D. Cal. Aug. 9, 2018).....................11

*Townsend v. Monster Beverage Corp.*,
    303 F. Supp. 3d 1010 (C.D. Cal. 2018)............................................................................7

**State Court Cases**

*Colgan v. Leatherman*,
    135 Cal. App. 4th 663 (2006)............................................................................................6

*GHK Assoc. v. Mayer Grp., Inc.*,
    224 Cal. App. 3d 856 (1990) ...........................................................................................10

*In re Tobacco II Cases*,
    207 P.3d 20 (2009) ............................................................................................................2

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003)...................................................................................................10

**Miscellaneous Authorities**

Advisory Committee Notes to Rule 23–1966 Amendments,
    39 F.R.D. 69 ......................................................................................................................2

Wright and Miller, 7A Fed. Prac. & Proc.
    § 1764 (3d ed. 2019).......................................................................................................12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

Defendant Logitech uniformly marketed its Z200 speakers as having two drivers per satellite. That representation was included on the product's packaging, on Logitech's website, and in advertising copy provided to third-party vendors, in substantial part because the Z200 was intended to serve as a step up from Logitech's one-driver speakers. But Plaintiff James Porath contends, and the evidence shows, that this representation was literally false. The Z200 has one driver per satellite, and one other component made to *look* like a driver, but which is not. In other words, no one who purchased a Z200 got what they were sold, rendering this case readily amenable to class certification of the claims alleged by Porath.

Logitech's opposition to certification is a mile wide but an inch deep. Logitech repeatedly conflates distinct concepts, confuses certification with the merits, and at one point argues that Porath cannot certify a nationwide class to pursue UCL claims (something, it bears emphasizing, Porath is *not* trying to do). Logitech's scattershot approach to opposing class certification is plainly an attempt to distract from the reality that the core facts here apply classwide.

In spite of a mountain of evidence to the contrary, Logitech asks the Court to conclude that class members weren't uniformly exposed to Logitech's two-driver representation, but per the above, that's just not true. Logitech then complains that Porath has not provided classwide proof of materiality, but (i) that is simply incorrect, and (ii) in any event, because materiality is adjudicated on an objective standard, it is a merits issue to be adjudicated at trial. Logitech next takes a handful of potshots at Porath's damages theory, but none land because Plaintiff's damages theory—restitution of Logitech's ill-gotten gains—matches his theory of liability and applies classwide. Logitech's suggestion that Porath himself lacks a typical claim fares no better. Porath testified that he did not get the value he expected when he bought his Z200 speakers, that he felt that the speakers were "misrepresented," and that he considered the number of drivers to be material to the purchasing decision. That is the same theory he presses on a classwide basis, meaning his claim is typical of the class.

For these reasons, among others, the motion for class certification should be granted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT IN REPLY**

**I.      Purchasers of the Z200 were exposed to materially uniform misrepresentations.**

Logitech begins with a familiar refrain in consumer fraud cases: that proposed class members were not exposed to uniform misrepresentations.[1] *See* Defendant's Opposition to Plaintiff's Motion for Class Certification ("Opp."), Dkt. 74, at 9-12. The issue is critical at this juncture because classwide exposure to consistent messaging paves the path to certification for both statutory and common law fraud claims. As then-Judge Sotomayor once wrote in the context of allegedly fraudulent oral misrepresentations, fraud claims based on "materially uniform" misrepresentations are appropriate for class treatment because they may be "demonstrated using generalized rather than individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1249 (2d Cir. 2002); *accord* Advisory Committee Notes to Rule 23–1966 Amendments, 39 F.R.D. 69, 103 ("A fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action").

And as for UCL and FAL claims, relief "is available without individualized proof of deception, reliance, and injury." *In re Tobacco II Cases*, 207 P.3d 20, 35 (2009); *see also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 n.13 (9th Cir. 2011) (abrogated on other grounds) ("[I]n effect, California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury; restitution is the remedy."). In other words, so long as the bait is common to the class, class treatment is appropriate. *See*, *e.g.*, *Brickman v. Fitbit, Inc.*, No. 15-cv-02077-JD, 2017 WL 5569827, at *6 (N.D. Cal. Nov. 20, 2017); *English v. Apple Inc.*, No. 14-cv-01619-WHO, 2016 WL 1188200, at *9 (N.D. Cal. Jan. 5, 2016) (noting that to certify a fraud claim the plaintiff must show that the defendant used "similar misrepresentations … despite some variance in the

---

[1]      Logitech also raises several "evidentiary objections." Opp. at 8. Putting aside that the underlying documents all come from Logitech's discovery productions, the objections are nonsense. The proof needed to show compliance with Rule 23 need not be in the form of admissible evidence. *See Sali v. Corona Regional Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018).

specific language used" and "the level of uniformity necessary to certify a class under the … UCL based on alleged misrepresentations … is similar").

It is therefore no surprise that defendants charged with fraud frequently argue that members of putative classes were exposed to materially different (mis)representations—and bolster those arguments with mountains of evidence of the materially differing representations. But Logitech's argument here is different than that of the typical defendant because, rather than actually presenting examples of *materially different representations*, Logitech ducks the main issue and instead gripes that Porath has not offered screenshots from every website that ever sold the Z200. That approach is most remarkable for what it doesn't do: it doesn't contend that Porath had it wrong when he cited evidence that Logitech made an internal determination that advertising the Z200 as having two drivers in each satellite would be a key selling point, *see* Plaintiff's Motion for Class Certification ("Mot."), Dkt. 57, at 5 (citing numerous pages in Group Exhibit D); it doesn't take issue with Porath's evidence-backed assertion that Logitech advertised the Z200 on its own website as having two drivers per speaker, *see* Mot. at 2 (Figure 2)[2]; and it effectively concedes—as it must, given Porath's evidence—that the Z200 advertising copy and promotional materials Logitech provided to third-party vendors included the "two-driver" representation, *see* Mot. at 1 (Figure 1) and 2 (citing numerous pages in Group Exhibit D). Indeed, Logitech all but admits on page 7 of its Opposition that every purchaser of the Z200 has been exposed to the two-driver claim, whether on the website they purchased it from or on the product packaging.[3] That is more than sufficient to show commonality and predominance here.

Logitech nevertheless contends for two main reasons that Porath's showing of classwide exposure is insufficient. First, Logitech contends that "in store" customers wouldn't have seen

---

[2]    Logitech incorrectly argues that Figures 1-4 in Plaintiff's Motion lack evidentiary foundation. *See* Opp. at 6, n.6. In fact, Figures 1-4 are authenticated in the Declaration of Rafey S. Balabanian as documents that Logitech produced in discovery. *See* Dkt. 57-1 ¶ 14.

[3]    Picking at the lint, Logitech does offer a single example of a website that purportedly did not, for unknown reasons, show the two-driver representation. Opp. at 11 (citing Borders Decl. at Ex. 13). But that is no matter: if Logitech's assertion is correct, purchasers of the Z200 from that website are not eligible class members under Porath's proposed class definition.

any claim that Z200 speakers had two drivers per satellite because "neither version of the product packaging" contains that claim. *See* Opp. at 10. In support of this statement, Logitech cites to Figures A and B of its Opposition brief. *Id.* That is curious, as Figures A and B in fact *confirm* that the product packaging has always misrepresented the number of drivers in the Z200: Figure A includes claims that the Z200 has "2 2.5" drivers (1 active, 1 passive)" and—next to a graphic of a Z200 satellite in which the passive radiator is making the *same* sound waves as the driver—gives the description "2-driver system." Opp. at 7. And Figure B, for its part, includes a claim that the Z200 sports a "four-driver (two active, two passive) design." *Id.* Most charitably read, Logitech appears to be arguing that, although it misrepresented exactly the same information to each customer in essentially the same way, the specific misrepresentations themselves weren't verbatim from customer to customer, precluding class treatment. The Ninth Circuit rejected a nearly identical argument in *In re First Alliance Mortgage Co.*, 471 F.3d 977, 990-91 (9th Cir. 2006). Although agreeing that misrepresentations, to support class treatment, need to be *materially* uniform, the court rejected the defendant's argument that they should be "all but identical," holding instead that "it is the underlying scheme which demands attention." *Id.*; *see also Cabral v. Supple LLC*, 608 F. App'x 482, 483 (9th Cir. 2015) ("some deviations from precise wording … might not be fatal to class certification"); *In re Apple, AT&T iPad Unlimited Data Plan Litig.*, No. C-10-02553 RMW, 2012 WL 2428248, at *5 (N.D. Cal. June 26, 2012) (denying motion to strike class fraud allegations, noting that although class received information through different channels, the information at heart of fraud claim "was made on a consistent basis by defendants"). The "underlying scheme" here is clear: Logitech consistently misrepresented the Z200 as featuring two drivers per satellite. But in fact, they feature one. Consequently, Logitech's misrepresentations can and should be adjudicated classwide.

Second, Logitech argues that because some individuals were informed that one "driver" per satellite was "passive," that those individuals weren't misled. *See* Opp. at 7, 10. But referring to a passive radiator as a "passive driver" does nothing to cure the underlying misrepresentation because Porath's theory of the case is that there is no such thing as a "passive" driver. *See*

Complaint, Dkt. 1, ¶ 4 ("Simply put, a 'passive driver' is something that does not exist."); *accord* Dkt. 74-12 at 20-21 (testifying that the phrase "passive driver" is "like an oxymoron"). A claim that one "driver" is "passive" is not, therefore, materially different than a claim that a passive radiator is a "driver."[4] And Ninth Circuit precedent requires that the evidence be viewed from the perspective of the plaintiff's theory of the case. *See United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 808-09 (9th Cir. 2010). Moreover, Logitech's argument, that describing a passive radiator as a "passive driver" is not misleading, amounts to a quarrel with Porath's legal theory on the merits—a dispute the Court should not entertain at this juncture.

Because all class members were exposed to the two-driver misrepresentation in a materially uniform way, certification of Porath's claims is appropriate.

## II.   Porath has made a more-than-adequate showing of materiality and deception.

Focusing exclusively on Porath's UCL and FAL claims, Logitech next contends that certification of the proposed Subclass should be denied because "plaintiff's motion is *completely silent* on the issues of deception and materiality." Opp. at 13.

As a threshold problem for Logitech, that just isn't true. Plaintiff's motion is, in fact, rife with evidence that Logitech's "two-driver" representation is both deceptive and material. To choose just a few examples, Figures 1-3 and various discovery documents presented in Exhibit D show Logitech consistently and prominently touting the two-driver representation in promotional materials, advertising copy, and product packaging—which supports an inference that the two-driver representation is material; Figure 4 shows a Logitech Audio Architect explaining that there is "only one driver on each side," supporting an inference that the two-driver representation

---

[4]      Logitech also repeatedly employs rhetorical sleight-of-hand in arguing that descriptions of the Z200's passive radiator as a passive driver somehow "disclosed" that the Z200 does not, in fact, have two drivers per satellite. *See, e.g.*, Opp. at 7, 8, 23. But that's not a fair interpretation: there is no such thing as a "passive driver," and describing a passive radiator as a "passive driver," far from being a disclosure, is just as deceptive of a statement as describing it as a "driver."

1    is deceptive; and Exhibit F shows both a consumer and a Logitech employee confused as to why

2    the bottom cone of the Z200 had no wiring and wasn't producing sound, supporting—again—the

3    inference that the two-driver representation is deceptive. Logitech tries to downplay all this

4    evidence, suggesting that Porath's only showing of materiality or deception is a statement by his

5    attorneys. *See* Opp. at 13. But the quoted statement is the conclusion Porath will ask the jury to

6    draw from the evidence, illustrative examples of which are attached to his motion.

7           More fundamentally, though, even if Logitech were "correct in its assertion that Plaintiff

8    has failed to provide sufficient evidence of deception and materiality, that failure has no bearing

9    on whether common questions will predominate over individual questions in the instant case."

10   *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018). That's because, for

11   the UCL and FAL claims of Porath and the Subclass, whether Logitech's representations were

12   misleading and material "must be evaluated according to an objective 'reasonable consumer'

13   standard." *Id.*; *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Put

14   another way, because deception and materiality are objective questions, they are "'common

15   question[s]' for purposes of Rule 23(b)(3)." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,

16   568 U.S. 455, 467 (2013) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 242 (1988)). As a result,

17   "[t]here is no risk whatever that a failure of proof on the common question[s] of [deception and]

18   materiality will result in individual questions predominating." *Id.* at 468. "Instead, the failure of

19   proof on the element[s] of [deception and] materiality would end the case for one and for all; no

20   claim would remain in which individual ... issues could potentially predominate." *Id.*; *see also*

21   *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS, 2016 WL 1535057, at *5 (N.D. Cal.

22   Apr. 15, 2016) (relying on *Amgen*'s logic in case under UCL).

23          No matter, Logitech says, because Porath did not produce any "expert testimony or

24   consumer survey[.]" Opp. at 13. But California courts have flatly rejected the notion that "a

25   plaintiff must produce a consumer survey or similar extrinsic evidence to prevail on a claim that

26   the public is likely to be misled by a misrepresentation." *Colgan v. Leatherman*, 135 Cal. App.

27   4th 663, 681-82 (2006); *accord Mullins*, 2016 WL 1535057, at *5. Unsurprisingly, then, the

28

cases Logitech cites in support of its demand for a consumer survey (or some other similar evidentiary showing) stand for a different proposition than Logitech wishes they did. Recall that a plaintiff litigating a UCL or FAL claim has "two lines of attack." *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 894 (N.D. Cal. 2016). A plaintiff may demonstrate that a challenged representation is either "literally false" or "misleading." *Id.* at 894-95. This task is complicated in cases in which all agree that the challenged representation lacks a fixed meaning. In those cases, classwide evidence of materiality, in the form of a consumer survey, may be necessary. *See, e.g.*, *Jones v. ConAgra Foods, Inc.*, No. 12-cv-01633-CRB, 2014 WL 2702726, at *15 (N.D. Cal. June 13, 2014); *see also In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. 13-ml-2438-PSG, 2017 WL 2559615, at *7 (C.D. Cal. June 7, 2017); *Allen v. Conagra Foods, Inc.*, 331 F.R.D. 641, 658 (N.D. Cal. 2019) (*reconsidered on other grounds*).[5] Still, other courts disagree, noting that the objective standard employed by the UCL obviates the need to account for varying consumer understandings. *See, e.g.*, *Hadley*, 324 F. Supp. 3d at 1116; *Dickey v. Advanced Micro Devices*, No. 15-cv-4922-HSG, 2019 WL 251488, at *6 (N.D. Cal. Jan. 17, 2019).

In any event, that is not the situation presented in this case. Porath's core claim is that the two-driver representation is literally false (and, a fortiori, materially misleading) because the meaning of the word "driver"—a word that Logitech itself defined, for years, in its own audio glossary—is not subject to a reasonable dispute. *See Allen*, 331 F.R.D. at 659 ("By contrast with the word 'natural,' [which was at issue in *Jones*], zero means zero just as per serving means per serving; the interpretation of the challenged statements is susceptible to common proof."). Neither has Logitech even shown that the word "driver" is subject to differing interpretations, no matter how often its lawyers pretend that webpages titled "passive radiator" actually describe "passive drivers." *See Brickman*, 2017 WL 5569827, at *5-6 (statement that device had "sleep tracking" capability—when in fact it measured movement, something the defendant contended

---

[5]     Other of Logitech's cases are inapplicable or unpersuasive for different reasons. For example, *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1043-47 (C.D. Cal. 2018), improperly imports the standards applicable to a claim under the Consumer Legal Remedies Act (or "CLRA") into the UCL context.

1    provided similar value—was "clear, concrete, and defined," thereby permitting class

2    certification). And, of course, because Porath's theory relies on the premise that drivers are never

3    "passive," his theory permits classwide proof of falsity, and therefore materiality and deception.

4    Consequently, the lack of "expert testimony or [a] consumer survey" is no bar to certification of

5    the proposed Subclass in this case.

6    **III.    Porath's damages theory is certifiable.**

7            Logitech next argues that certification is inappropriate both because Plaintiff's damages

8    theory is disconnected from his theory of liability—insofar as it purportedly presumes that

9    passive radiators are worthless—and because Plaintiff's damages theory is insufficiently precise.

10   Opp. at 15-18. True enough, at class certification, a plaintiff must demonstrate that "'damages

11   are capable of measurement on a classwide basis,'" but as the Ninth Circuit has explained, this

12   means simply "that the whole class suffered damages traceable to the same injurious course of

13   conduct underlying the plaintiffs' legal theory." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120

14   (9th Cir. 2017) (quoting *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433-35 (2013)). Porath

15   has done so here. His chosen remedy—restitution of Logitech's ill-gotten gains—matches his

16   theory of liability, is provided by his legal claims, and applies equally to every member of the

17   Class and Subclass. Nothing more is necessary for certification. *See Lambert v. Nutraceutical*

18   *Corp.*, 870 F.3d 1170, 1182-84 (9th Cir. 2017) (*rev'd on other grounds*). And Porath has gone

19   even further here: he has entered into the record the wholesale pricing data that underlies and

20   supports his damages theory. *See* Mot. at 16; Dkt. 56-12 at LOG_00014402-09. That is far more

21   than enough.

22           Logitech's scattershot quibbles with the certifiability of Porath's damages theory are

23   unpersuasive. First, Porath *does not contend* that passive radiators are worthless. That statement

24   appears nowhere in Porath's papers, deposition testimony, or discovery responses; Logitech

25   appears to have manufactured the straw man argument out of thin air. What the record actually

26   shows is that Logitech advertised having two drivers per satellite as a "key feature" of the Z200,

27   that the two-driver representation made the Z200 "different," and that the Z200 would drive "up-

28

sell" from the next-step-down Logitech speaker (which has only one driver per satellite). Dkt. 56-6 at LOG_00000326-27. This evidence aligns with Porath's theory that the Z200 speakers were consistently misrepresented as having two drivers per satellite. *See generally* Complaint, Dkt. 1. And Porath's damages theory links directly to that liability theory, isolating the average wholesale price premium Logitech extracts when a consumer is "up-sold" to the Z200 from the Z150 (Logitech's concurrently-released, one-step-down, single-driver-per-satellite offering).

Moreover, it is worth remembering that Porath's task at class certification is to show that damages are *capable* of classwide measurement, not actually to precisely measure them. *See Just Film*, 847 F.3d at 1120 (plaintiffs simply "gave examples of methods for calculating damages" based on defendants' own records or class members' reported expenses); *Brickman*, 2017 WL 5569827, at *7; *Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013). Critically, Logitech does not contest that it charges an ascertainable premium attributable to the second purported driver in the Z200. And even if the passive radiator provides value, it provides value to everyone in the class. Logitech will of course be free, at trial, to try to convince the factfinder that the class is not entitled to the full premium Logitech extracts from sales of the Z200 as compared to the Z150. But whether or not the passive radiator (which, again, is *not* a driver) provides value, and whether or not the Z200 is a sufficiently otherwise-comparable product for purposes of Porath's damages theory, that damages theory is *capable* of classwide measurement. A similar problem inheres in Logitech's argument that Porath's damages calculation isn't "reliable." Opp. at 16. Again, this is simply a merits fight over *how* damages should be calculated at trial, not an argument that Porath fails to present a damages theory that will apply classwide.

Logitech takes a shotgun approach to complaining that Plaintiff's damages theory is insufficiently precise, variously arguing that Porath's theory must take into account the value of different speaker components, different retail prices paid by different consumers, and different wholesale prices charged by Logitech. Opp. at 17-18. But the law simply doesn't require such precision for Plaintiff's damages claims. Under the UCL and FAL, damages calculations are "particularly forgiving." *Lambert*, 870 F.3d at 1183. Indeed, the UCL and FAL "'require[] only

that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.'" *Pulaski & Middleman, LLC v. Google Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (quoting *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 938-39 (9th Cir. 1999)). The common law, for its part, requires only that "some reasonable basis of computation of damages be used," and "the damages may be computed even if the result reached is an approximation." *Marsu*, 185 F.3d at 938–39 (quoting *GHK Assoc. v. Mayer Grp., Inc.*, 224 Cal. App. 3d 856, 873 (1990)). So while Logitech contests the precision of Porath's proposed damages model, it doesn't contest that it meets the applicable reasonableness standard.

Finally, Logitech gripes that wholesale transactions cannot serve as the basis of Porath's damages analysis. Opp. at 18. But one method of calculating restitution is the profits that Logitech has realized as a result of its deception of Plaintiff and the class. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003) (UCL plaintiffs "may recover profits unfairly obtained" where plaintiffs can establish right to such profits); *see also Russell v. Kohl's Dep't Stores, Inc.*, No. 15-cv-1143-RGK, 2015 WL 12781206, at *4 (C.D. Cal. Oct. 6, 2015). While restitution theories often rely on the consumers' cost at retail, that reflects the usual difficulty in isolating a defendant's profits attributable to the wrongdoing. *See, e.g.*, *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-cv-4387-PJH, 2014 WL 60097, at *10 (N.D. Cal. Jan. 7, 2014). The wholesale pricing evidence in this record, however, provides hard evidence of the price premium Logitech extracted from consumers up-sold from the Z150 to the Z200, rendering Plaintiff's damages theory appropriate—and certifiable—in this case.

## IV. Porath is typical of, and will adequately represent, the proposed Class and Subclass.

Logitech next contends that Porath is an atypical class member, thus precluding certification, because he lacks standing for his statutory claims and is subject to unique defenses. Neither contention holds water.

Logitech first argues that Porath didn't rely on Logitech's two-driver representation and consequently that he lacks a cognizable injury under the UCL and FAL. The argument is belied by Porath's testimony. He testified that his purchasing decision would have been different if he

had been given correct information about the Z200, and that he was "in the market for [this] particular pair" because he believed "I was getting more than just, you know one [driver] per cabinet." Dkt. 74-12 at 19. In fact, Logitech's attorney asked Porath directly if "you purchased them because you thought they had two active drivers per satellite?" To which Porath replied, "Yes, that is correct." *Id.* at 53. Porath then confirmed that the two-driver claim was "material" to his purchasing decision. And he later testified that when he purchased the Z200, he did not receive "the value that [Porath] expected." *Id.* at 55.

Logitech's reliance on *Spacone v. Sanford, L.P.*, No. 17-cv-02419-AB-MRW, 2018 WL 4139057 (C.D. Cal. Aug. 9, 2018), is unpersuasive. The plaintiff in *Spacone* alleged that the defendant sold Krazy Glue adhesive in packages that mislead consumers as to how much adhesive was inside. *Id.* at *1. The plaintiff had purchased two tubes of Krazy Glue on one occasion, in order to complete car repair work. *Id.* But the plaintiff conceded that he would have needed two tubes of the adhesive even if the packaging were different, and that he would have purchased regardless. *Id.* at *4. Thus, it was clear that the plaintiff did not spend any money in reliance on the defendant's alleged misrepresentations. *See id.* at *5. By contrast, Porath's testimony shows what the testimony in *Spacone* did not: actual reliance on a misrepresentation that was material to a purchasing decision. There is no issue of statutory standing in this case.

Logitech's contentions regarding supposed "unique defenses" ring hollow as well. In substantial part, Logitech does not put forward any actual defenses, but simply rehashes its wrongheaded contentions about the merits of the case and whether all class members were exposed to materially similar misrepresentations. (They were.) Logitech seizes on a one-word "yeah" response during a confused, overlapping exchange nearly five hours into Porath's deposition to suggest that he believes he received "full value" for his purchase. Opp. at 20. But any fair review of Porath's deposition testimony—even just the cherry-picked parts in Logitech's brief—reveals quite the opposite. *See, e.g.*, Dkt. 74-12 at 19-20, 55-56, 92. Noting that Porath purchased his Z200 speaker set at a discount, Logitech suggests Porath is atypical because "his damages will be calculated in a different manner." Not so: Porath's damages theory, which looks

at the ill-gotten gains Logitech extracted at wholesale, is equally applicable to purchases of refurbished units or other retail-discounted units. And in any event, Rule 23(a)(3)'s typicality requirement "may be satisfied even though … there is a disparity in the damages claimed by the representative parties and the other class members." Wright and Miller, 7A Fed. Prac. & Proc. § 1764 (3d ed. 2019) (collecting cases at note 13).

Mr. Porath will also adequately represent the interests of the proposed Class and Subclass. In working with counsel to prepare his declarations at Dkt. 61-2 and 72, and driving more than 8 round-trip hours for his October 8 deposition in Los Angeles, he has already demonstrated his commitment to vigorously pursuing this action on behalf of the class. Porath has no known conflicts of interest in this case, no prior history of litigiousness, and no prior history with Edelson PC or any of its attorneys. He has fully disclosed his criminal history, and made a compelling case—both in his declarations and throughout his deposition testimony—that he truly has been rehabilitated since a dark chapter in his life. Since being released from incarceration in March 2016, Porath has truly turned his life around. Dkt. 61-2 at ¶ 15. While on parole, he was subject to routine drug testing, passed all tests, and remains clean to this day. *Id.* ¶ 14. He also attended regular psychotherapy sessions, which helped him enormously. *Id.* ¶ 15. Upon release from incarceration, he re-founded his electronics business, which is thriving. *Id.* He has a close relationship with his mother and father, who live near him, and his brother recently moved into his home. His life is, in his words, the best it has ever been. *Id.* Porath retains the full legal and physical custody of his daughter, which is the greatest joy in his life, and he is committed to keeping his life on track to make sure it stays that way for the long term. *Id.* ¶ 16. In brief, Plaintiff is more than just an adequate class representative: he has a true story of redemption to tell, and will make for a superior witness at trial.

## V.     Porath's nationwide common law fraud Class is appropriate for certification.

Logitech spills much ink arguing that Porath's UCL and FAL claims can't be certified on behalf of a nationwide class. Opp. at 20-23. But Porath's complaint never alleged California statutory claims on behalf of the nationwide Class, and his Motion for Class Certification—of

course—never sought to certify such claims. The only claim Porath seeks to certify on behalf of a nationwide class is a claim for common law fraud (under the common law of each class member's respective state of citizenship). As Porath conceded in his Motion, a plaintiff seeking to certify a common law claim on behalf of a nationwide class of consumers faces substantial hurdles. *See, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 563 (9th Cir. 2019); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012). But Porath is aware of no Ninth Circuit authority that expressly bars nationwide certification of fraud claims, and this case— where consumers were exposed to a materially uniform, literally false representation, where that representation was obviously material, where the misrepresentation caused identical injuries entitling proposed class members to identical or nearly-identical remedies, and where no material conflicts exist among class members—is an ideal candidate for nationwide certification.

The main challenges posed by a nationwide class are trial manageability concerns, and generally are regarded as predominance problems. *See Hyundai*, 926 F.3d at 563 (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190–92 (9th Cir. 2001)). In the average case, material differences in state laws—whether statutory or common law—would so complicate a trial that they "swamp any common issues and defeat predominance." *Lane v. Wells Fargo Bank, N.A.*, No. 12-cv-04026-WHA, 2013 WL 3187410, at *4 (N.D. Cal. June 21, 2013) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir.1996)). But in this specific case, given the literal falsity of Logitech's representation and the straightforward nature of the proposed classwide remedy, there are almost no relevant variations in state fraud laws, and any that exist can be addressed by jury instructions, verdict forms, and trial subclasses, to the extent necessary. *Hyundai*, 926 F.3d at 563 n.7; *Mazza*, 666 F.3d at 594.

Logitech identifies the following general "variations" in state common law fraud claims nationwide: (1) differing burdens of proof; (2) differing definitions of materiality; (3) differing standards for establishing classwide reliance; (4) differing standards for scienter, (5) differing statutes of limitations, and (6) differing approaches to damages calculations. Opp. at 22; Ex. 10 to Borders Decl. at 9-15. Almost all of these general variations are, under the facts of this case,

immaterial. First, differing statutes of limitations are irrelevant here, as Porath's claim is that Logitech has engaged in fraud which consumers have always been unaware of, meaning all statutes of limitations have been tolled since the launch of the Z200. Second, Plaintiff's classwide theory of restitution is plainly available under any state's laws, meaning no variations in state approaches to damages calculations are material here. Third, any variance in state-law standards for materiality and scienter are immaterial, as Defendant's own documents make plain the materiality of the "two-driver" representation and because Plaintiff's claims themselves— given that he is a California citizen—require scienter. Fourth, Logitech argues that states have different standards for inferred reliance (*e.g.*, "justifiable reliance" versus "reasonable reliance"). But given the centrality of the two-driver misrepresentation to the marketing of the Z200, as evidenced by Logitech's internal documents which consistently show the Z200's driver count as its core differentiator, no state-law differences in formulations of inferred reliance are material here. And because none of these state-law differences are material, Porath can adequately represent the common law fraud claims of citizens of other states. *Cf. Zinser*, 253 F.3d at 1190.

That leaves just two material variations in state law. First, Logitech points out that California employs a "preponderance of the evidence" standard for fraud claims, but most states employ a "clear and convincing evidence" standard. Opp. at 22. A simple trial plan featuring two different jury instructions, two different lines on the verdict form, and a California Subclass (which, presumably, will already have been certified for purposes of pursuing UCL and FAL claims) can easily deal with that issue at trial. *Hyundai*, 926 F.3d at 563 n.7; *Mazza*, 666 F.3d at 594. Second, Logitech highlights that Delaware and Florida bar fraud class actions because reliance may not be inferred in those states. Assuming the authority provided by Logitech remains good law, Plaintiff no longer seeks to represent citizens of Delaware and Florida as part of his nationwide (or, rather, now near-nationwide) common law fraud class.

Overall, this is nothing like a case where "hundreds of different contracts implicating the laws of fifty states, each with its own choice-of-law provision and specific contractual language" threaten to overwhelm any efficiency advantages of proceeding on a class basis. *Lane*, 2013 WL

1  3187410, at *4. Instead, it is a case where a single defendant consistently and affirmatively

2  misrepresented a single aspect of a single product, and the plaintiff seeks a remedy that is

3  available nationwide. Consequently, almost no variations in state fraud laws are material *in this*

4  *case*, and any material variations can be addressed through a suitable and realistic trial plan

5  featuring customized jury instructions, verdict forms, and subclasses. *Zinser*, 253 F.3d at 1189;

6  *Hyundai*, 926 F.3d at 563 n.7. That makes this the rare fraud case fit for nationwide certification.

7  **VI.    A class action is a superior means of adjudication.**

8       Finally, Logitech contends that a class action isn't superior here. That's plainly incorrect.

9  The small damages available here (dwarfed even by the filing fee) would greatly disincentivize

10  an individual suit. Thus, absent a class action, Logitech would be permitted to commit fraud on a

11  mass scale, nickel-and-diming consumers who lack an adequate remedy. Logitech believes these

12  benefits are undermined completely by the fact that the proposed class is supposedly not

13  ascertainable. But Porath's proposed Class and Subclass are objectively defined, and do not

14  condition class membership on a merits victory, so they are "ascertainable" under relevant Ninth

15  Circuit precedent. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017).

16      Logitech also feigns concern about the ability of class members to self-identify, but this

17  is a phantom concern. To begin, Logitech has provided no basis for the Court to conclude that

18  consumers are incapable of remembering whether they purchased the Z200 from a retailer that

19  used Logitech's "two-driver" claim. Moreover, as described above, *all* brick-and-mortar sales

20  included the misrepresentation, and nearly 90% of Z200 sales were made by just 9 vendors. *See*

21  Opp. at 9-10 n.8. Post-certification discovery will reveal which of those 9 vendors—perhaps in

22  addition to others—used the "two-driver" advertising copy provided to them by Logitech. In

23  turn, that will allow a claim form in this case to include language like "If you purchased your

24  Z200 in a brick-and-mortar store, or from [list of major website vendors], you are member of the

25  Class." The result is an administratively feasible method for class member self-identification.

**CONCLUSION**

26  

27      The court should grant the motion for class certification.

28

1

2                                        Respectfully submitted,

3
                                         **JAMES PORATH**, individually and on behalf of
4                                        all others similarly situated,

5

6    Dated: October 31, 2019             By: /s/ Rafey S. Balabanian

7                                        One of Plaintiff's Attorneys

8                                        Rafey S. Balabanian (SBN – 315962)
                                         rbalabanian@edelson.com
9                                        Todd Logan (SBN – 305912)
                                         tlogan@edelson.com
10                                       EDELSON PC
                                         123 Townsend Street, Suite 100
11                                       San Francisco, California 94107
                                         Tel: 415.212.9300
12                                       Fax: 415.373.9495

13
                                         *Attorneys for Plaintiff and the Putative Class*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S REPLY ISO                          16                    Case No. 3:18-cv-03091-WHA
CLASS CERTIFICATION