IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES PORATH, individually and on
behalf of all others similarly situated,

    Plaintiff,

  v.

LOGITECH, INC.,

    Defendant.

No. C 18-03091 WHA

**ORDER DENYING
CLASS CERTIFICATION**

## INTRODUCTION

In this consumer putative class action, plaintiff moves to certify two classes under Rule 23(b)(3). For the reasons stated herein, however, the proposed class representative, a three-time convicted felon, cannot be trusted as a fiduciary to lead any class. The motion for class certification is **DENIED**.

## STATEMENT

Defendant Logitech, Inc. manufactures, distributes, and sells a computer speaker system called the "Logitech Z200." The complaint alleges that Logitech falsely and deceptively advertised its Z200 speakers as containing four drivers when two of those "drivers" did not independently produce sound and were merely parasitic. In brief, speaker systems contain a component called a "driver," which is an electromagnetic coil that turns modulated electrical

signals into sound waves. So, the greater number of drivers, the louder, perhaps richer, the sound (Dkt. No. 1 ¶¶ 1, 3–5, 30, 32, 41, 42).

Another component in the Z200 looks like a driver, but does not independently produce sound, called the "passive driver" (by Logitech) or the "passive radiator" (by plaintiff). This component merely allows sound to resonate within a set frequency range. The essential legal question is whether Logitech engaged in fraud when it advertised this passive component as a "driver" (*id*. ¶¶ 4, 35).

Plaintiff's law firm discovered this discrepancy, advertised for a plaintiff, and James Porath answered the call. He owns a small business specializing in electronics repairs. He purchased Logitech Z200 speakers from a third-party website called Newegg.com. Plaintiff soon "discovered" that the speakers at issue here did not contain four drivers, but instead contained two "active" drivers and two "passive" drivers (Porath Decl. ¶¶ 3–5, 9) (Balabanian Decl. ¶ 3) (Dkt. Nos. 57-2; 61-1).

In May 2018, plaintiff filed the instant putative class action, alleging three claims: (i) common law fraud; (ii) violation of Section 17200 of the California Business and Professions Code; and (iii) violation of Section 17500 of the California Business and Professions Code. Plaintiff also sought to represent two consumer classes under Rule 23(b)(2) and Rule 23(b)(3). *First*, he sought to represent a nationwide class of "[a]ll individuals in the United States who purchased Logitech's Z200 stereo sound system." *Second*, he sought to represent a California subclass of "[a]ll members of the [n]ationwide [c]lass that are domiciled in the State of California." In July 2018, defendant answered the complaint (Dkt. Nos. 1 ¶ 47; 18).

In August 2018, two days before the initial case management conference, plaintiff moved to be appointed interim class counsel so that the parties could discuss class-wide settlement (Dkt. No. 25). Here, this order pauses to provide context. To protect absent class members and to assist counsel in understanding the factors the Court considers in evaluating proposed class settlements, the undersigned judge has long provided guidance to both sides at the outset of any proposed class action. One aspect of this guidance has regulated the timing of

class-wide settlement discussions. Specifically, the order herein prohibited any discussion of class settlement prior to the certification of claims worthy of class treatment and identifying the scope of any class. Prior to formal class certification, there is a risk that class claims will be discounted, not only on the merits (which is proper) but also by the risk that class certification might be denied (which is improper or at least adverse to absent class members). Or, to quote directly from the order (Dkt. No. 16 at 5) (internal citation omitted) (emphasis added):

> Absent class members, of course, should be subject to normal discounts for risks of litigation on the merits but they should not be subject to a further discount for a risk of denial of class certification, such as, for example, *a denial based on problems with a proposed class representative, including a conflict of interest or a prior criminal conviction*. This is a main reason the Court prefers to litigate and vet a class certification motion *before* any class settlement discussions take place. That way, the class certification is a done deal and cannot compromise class claims. Only the risks of litigation on the merits can do so.

Once a class is certified, counsel for the class can negotiate with the strength of a certification order in hand, all to the good of the class. Nevertheless, the order also advised that "[i]f counsel believe settlement discussions should precede a class certification, a motion for appointment of interim class counsel must first be made" (*ibid.*). This guidance order issued herein in June 2018.

Despite this express reference to a prior criminal conviction, plaintiff's counsel neglected to vet their client's criminal history and moved to be appointed as interim class counsel. The parties even stipulated to reasons why they believed pre-class certification settlement discussions might have been appropriate at that moment (Dkt. No. 24 at 2). In considering the arguments from the parties' motion at the initial case management conference, the Court explained the problem as follows (Dkt. No. 30 at 3:14–23, 4:5–6) (emphasis added):

> See, look, here's the problem. It's called collusive settlements. I've had the following scenario. You apply to be — you bring a class action. *The other side realizes that you've got a convicted felon*. I'm making this up hypothetically. Or there's some other reason that you don't want the judge to know. Then you go do a collusive deal, come back, and say: oh, Judge, we got it off your calendar, no problem. Great. And for X dollars to the class and a huge, much bigger amount to the lawyer, you're going to settle the case . . . . So we are going to find out if you have got a legitimate class first.

3

So, again, the Court flagged the danger in discussing settlement on a class-wide basis when there is a plaintiff with a criminal history. To be clear, the judge had no clue that James Porath was, in fact, a convicted felon. The judge, though, had seen that scenario enough in the past to use it as an illustration. The Court ended by urging counsel on both sides to do their homework and specifically told counsel: "I want to go through the normal Rule 23 process. I want to see if the plaintiff is a legitimate plaintiff. I want to see if he's got standing." The Court then denied plaintiff's interim counsel motion (*id*. at 11:7–8, 18–19).

Unsatisfied with this ruling, Logitech petitioned our court of appeals seeking an extraordinary petition for writ of mandamus on the theory that the Court's standard guidance violated Rule 23 as well as Logitech's First Amendment rights. In December 2018, our court of appeals denied Logitech's extraordinary writ without prejudice because its arguments had never been raised below. In January 2019, Logitech raised those arguments in the district court but an order rejected them. Logitech then renewed its petition. In February 2019, eight days before the deadline for plaintiff's motion for class certification, our court of appeals granted an emergency stay of the action in full. Our court of appeals then sent the petition to a merits panel, which held oral argument in July 2019. In September 2019, the merits panel denied the petition. The stay was lifted. Logitech next applied for an emergency stay with our court of appeals predicated on the representation it would pursue a petition for writ of certiorari "within thirty days." Our court of appeals denied the emergency motion. One week later, in October 2019, Logitech applied for an emergency stay from the United States Supreme Court. Justice Elena Kagan denied that application. Logitech's thirty days has since come and gone and no petition for writ of certiorari has been filed (Dkt. Nos. 36, 38, 40, 46, 47, 53, 58; Case No. 19-70248, 9th Cir. Sept. 24, 2019, Dkt. No. 26 at 1; Appl. No. 19A376, Kagan, Circuit Justice 2019).

Meanwhile, after the stay lifted, the undersigned judge resumed the class certification process and gave plaintiff fourteen days to move for class certification. (The stay originally had come eight days before the motion had been due.) Plaintiff complied with the deadline and filed a timely motion for class certification (Dkt. Nos. 54, 57).

4

For the first time ever in this case, it came to light that "Porath does have some criminal history," according to plaintiff's opening brief (Dkt. No. 57 at 12). No further detail was given.

One week later, after our court of appeals denied Logitech's emergency stay pending possible review in the Supreme Court, plaintiff's counsel volunteered a supplemental brief in the district court to disclose that *plaintiff James Porath was a convicted felon three times over*. Further detail on these convictions will be provided below. Logitech's counsel immediately expressed apparent indignation as to the lateness of plaintiff's disclosure. An order then asked each side to say when counsel (on both sides) had received information on plaintiff's criminal history. The order also asked plaintiff's counsel to explain the full extent to which the pendency of the emergency motion was a consideration in their staged disclosure of the criminal history, meaning disclosing merely that he had "some criminal history" while the emergency stay was pending and later disclosing the felonies immediately after the stay was denied. The order also invited counsel to seek leave to add a different named plaintiff (Dkt. Nos. 61–63).

In response, plaintiff's counsel brought even more crimes to the Court's attention, although none of the new crimes were felonies. For their part, defense counsel revealed that they had known of plaintiff's criminal history since February 2019. They had revealed the information to no one, not to plaintiff, not to this Court, not to the court of appeals, and not to the Supreme Court. Despite an invitation to move to add a new plaintiff, no new plaintiff so moved (Dkt. Nos. 69 ¶ 8; 70; 74-1 ¶ 17).

After all that we have gone through in this case, including trips to the court of appeals and even to the chambers of Justice Kagan, the reader will readily appreciate the district judge's disappointment in the failure of both sides to bring the felony record to anyone's attention, the issue of a possible criminal history having been in play during the appellate proceedings. Throughout the appellate proceedings, one justification by the district judge for his postponement of settlement discussions until after a Rule 23 ruling was possible unsuitability of the named plaintiff by reason of a criminal record. Nevertheless, Logitech kept this information

5

from every court involved. Had that information been disclosed, the pragmatism of the district court's exercise of discretion would have been all the more apparent.

We now have a Rule 23 motion with a convicted felon proposed as the class representative. This motion, despite the Court's disappointment with counsel, must be and will be decided fairly and based on the law. Plaintiff Porath moves for certification of two classes. *First*, plaintiff Porath proposes he represent the following nationwide "fraud" class (Dkt. No. 57 at 3):

> All United States persons, except for citizens of Delaware and Florida, who purchased Logitech's Z200 stereo sound system prior to May 23, 2018, either in person or from a website page containing any of the following phrases (or derivations thereof): "Two drivers per speaker," "Two drivers per satellite," "Two 2.5" drivers per speaker," "Two 2.5" drivers per satellite," "Two 2.5 drivers per speaker," "Two 2.5 drivers per satellite," "Two 2.5-inch drivers satellite," "Two 2.5-inch drivers per speaker," "Four high quality 2.5-inch drivers," "Two 2.5" drivers," "Two 2.5" (6.3-cm) drivers per satellite."

(In his briefing, plaintiff Porath abandoned an attempt to represent citizens of Delaware and Florida because those states do not allow class actions for fraud) (Dkt. No. 75 at 14). *Second*, he also proposes to represent the following California subclass: All class members domiciled in the State of California (Dkt. No. 57 at 3).

Perhaps because Porath made significant admissions at his deposition, Logitech does not invoke plaintiff's criminal history in opposing class certification. And, no doubt defense counsel relish the opportunity to lay the felonies before the jury. A defendant, however, cannot stipulate for the class. The district judge must protect the class even as to points not raised by the defense. *See, e.g.*, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

**ANALYSIS**

The party seeking class certification bears the burden of showing that the four prerequisites of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequate representation. For a damages class under Rule 23(b)(3), a plaintiff must show predominance and superiority.

The adequacy requirement of Rule 23(a)(4) permits certification only if "the representative parties will fairly and adequately protect the interests of the class." A district

court acts within its discretion when determining a named plaintiff inadequate due to a recent criminal record. *Cf. Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) *cert. denied,* 569 U.S. 975 (2013).

Plaintiff's lengthy and recent criminal history is disqualifying here. The criminal history is as follows.

Plaintiff is a convicted felon three times over. In March 2013, plaintiff pled guilty to three felony charges in exchange for a sentence of three years probation in addition to time served. The first charge, for felony burglary, stemmed from September 2011 when plaintiff entered into the home of his ex-wife and her boyfriend and took undisclosed items. The second and third charge, for grand theft of property over $950 and vandalism of $400 or more, stemmed from June 2011, when plaintiff took items out of his ex-wife's boyfriend's car (Porath Decl. ¶¶ 5, 10; Logan Decl. Exh. 1 at 4) (Dkt. Nos. 61-2; 69-1).

In addition, plaintiff's criminal history included other misdemeanor convictions and miscellaneous charges and arrests. In December 2001, in a dispute with plaintiff's brother, plaintiff threw a brick through his brother's car window. He was charged with two misdemeanors: (1) vandalism under $1000 damage and (2) assault with a deadly weapon. The former charge was dismissed. Plaintiff was convicted of the latter charge and subsequently completed 36 months of probation. In October 2011, plaintiff was also charged with a misdemeanor for contempt of court because plaintiff had walked onto his ex-wife and her boyfriend's driveway, despite a restraining order. This charge was eventually dropped. Furthermore, after avoiding jail time for his three felony convictions, plaintiff struggled with depression and substance abuse. He did not check in with his probation officer. Then, in March 2015, while still on probation, plaintiff was pulled over for speeding with his child in the car. Plaintiff pled guilty to a misdemeanor of willful cruelty to a child. Plaintiff's probation was subsequently revoked and plaintiff was sentenced to 315 days of jail time (Porath Decl. ¶¶ 2 n.1, 6, 11–12; Logan Decl. Exh. 1 at 10) (Dkt. Nos. 61-2; 69-1).

Then, after this Court ordered that plaintiff provide his full criminal history, even more came to light as follows:

In September 2001, plaintiff was cited for allowing his younger brother's girlfriend who was not licensed to drive, to drive a car in which plaintiff was a passenger. Plaintiff failed to appear at his hearing and was charged with a misdemeanor for his failure to appear. (The charges were ultimately dismissed in 2006 and the case purged in 2012.) In December 2004, plaintiff was arrested outside a Fry's electronics store in San Diego county on suspicion of shoplifting. To the extent charges were ever filed, they were dismissed. The record on this appears to have been expunged. In September 2009, plaintiff pled guilty to two misdemeanors in Riverside County for (i) harassing by telephone and (ii) contempt of court. A felony charge of making death threats was dismissed (Logan Decl. Exhs. 1 at 6, 12; 4 at 2; 5 at 1; Suppl. Porath Decl. ¶¶ 3–5) (Dkt. Nos. 69-1; 70).

In short, to saddle a class with a representative who has seven criminal convictions, is a convicted felon three times over, has a history of substance abuse, and of not reporting to his probation officer, and of depression, is unacceptable. Two problems exist.

The first problem is Rule 609 and the risk that plaintiff could be clobbered on the stand with his convictions, all to the detriment of the class. His felony convictions would be admissible here. They will be particularly damaging to plaintiff's case here, where the element of *reliance* will hinge on plaintiff's testimony. That is, in order for plaintiff to assert a claim under either Section 17200 or Section 17500, plaintiff must have *relied* on Logitech's representation. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326–27 (2011). Plaintiff shows reliance in the instant motion by pointing only to his deposition testimony that he in fact relied on defendant's representations (Dkt. No. 75 at 10–11). The possibility of impeachment from plaintiff's three felony convictions is high, all to the detriment of the class depending on him. Perhaps some misdemeanor convictions will also be admissible. But the felony convictions are enough to make the point.

The second problem is that Rule 23 class representatives owe fiduciary duties to absent class members and are responsible for critical litigation decisions on the class's behalf. The class representative must be trusted in selecting counsel, responding to discovery, and guiding settlement negotiations, among other duties.

8

This order finds that plaintiff is not an adequate Rule 23 class representative because he is unfit to properly exercise his fiduciary duties to absent class members. He has a fifteen-year history of crime stretching from 2001 to 2015, including an admitted four-year period of drug-abuse. The tally since 2001 includes three felony convictions, four misdemeanor convictions, and miscellaneous arrests and charges. The convictions include burglary, theft, vandalism, willful cruelty to a child, and assault with a deadly weapon. In some cases, these were not crimes against strangers, but crimes against family victims who should have been able to trust plaintiff. This history is so deep, plaintiff himself evidently could not remember every wrong.

Plaintiff's counsel contend that plaintiff worked with counsel to prepare his two declarations and drove more than eight round-trip hours for his deposition. This shows, according to counsel, that plaintiff will vigorously represent the class. In addition, plaintiff's counsel argue that plaintiff "has a true story of redemption to tell, and will make for a superior witness at trial" (Dkt. No. 75 at 12). Indeed, plaintiff has allegedly tested clean on every drug test since March 2016 and has broken no laws since his release in March 2016. He now even has full legal and physical custody of his daughter. And, his parole came to an end in March of this year, while this case was pending (Porath Decl. ¶¶ 14–16) (Dkt. No. 61-2).

Completion of parole is hardly a qualification for a fiduciary post, much less for the fiduciary responsibility of a nationwide class under Rule 23. Plaintiff's crime spree remains too recent, too tender.

In short, plaintiff engaged in burglary, violated restraining orders, vandalized homes and vehicles, endangered his child, became addicted to drugs, and routinely failed to report to his probation officer. Class members should not be saddled with such a representative. Accordingly, Rule 23(a)(4) is not satisfied. This order finds that plaintiff James Porath cannot fairly and adequately protect the interest of the proposed class.

**CONCLUSION**

Plaintiff's motion for class certification is **DENIED**. All evidentiary objections are **OVERRULED**. At the hearing, plaintiff's counsel stated that he had another California plaintiff waiting in the wings. This order now gives plaintiff's counsel yet another chance to seek to add a new proposed class representative. The new deadline will be **DECEMBER 19, 2019**. Porath will remain an individual plaintiff. If a new representative is not timely proposed, then plaintiff's counsel will likely have to provide notice to absent class members of the demise of this class action.

**IT IS SO ORDERED.**

Dated: November 18, 2019.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10